## CLASON *vs.* CLASON and others.

Where C. died in 1815, and previous to his death devised to his three sons, W., I. and A., and the survivors and survivor of them, the rents and profits of his real estate for the term of 20 years after his decease, to be divided equally between his said sons and the survivor of them ; and if any one should die before the expiration of the 20 years, leaving a lawful child or children, such child or children to receive such portion of the rents and profits as would have belonged to the father if living ; and after the expiration of the said term of 20 years, C. gave and devised such real estate to his said three sons, their heirs and assigns forever, equally to be divided between them ; and if any son should die before a division of the estate, leaving a lawful child or children, such child or children to receive such portion of the estate as the father would have been entitled to if living ; and if either son should die before such division without leaving children him surviving, the portion of such son so dying should belong to the survivor or survivors, their heirs and assigns forever. And W., one of the sons, died in 1824, leaving children ; and in 1820, I., another of the sons, conveyed all his interest in the premises to E. L., from whom such interest passed by conveyance to the third son A., and I. died after the expiration of the 20 years, but before any division of the property ; *Held*, that if I. had died before the expiration of the 20 years without leaving issue, one half of his share would, under the will, have belonged to the children of W., and the remaining half would have belonged to A. ; but that at the expiration of the 20 years, one third of the property became absolutely vested in possession in I., who was then living, and before any actual decision of the same ; and that as the remainder devised to I. was vested in interest at the time of the conveyance to E. L. as a conditional fee, the title to the same became absolute, under that conveyance, at the expiration of the 20 years.

Where an estate is actually vested in a devisee who is the natural object of the testator's bounty, the court will not favour a construction of the will which will have the effect of divesting the estate.

In deciding whether a sale is necessary in a partition suit, the true question for the consideration of the master is whether the aggregate value of the several parcels into which the whole premises must be divided will, when distributed among the different parties in severalty, be materially less than the value of the same property if owned by one person.

THIS case came before the court upon exceptions to the July 18, master's report as to the title and interests of the parties in a suit for the partition of a farm in Westchester county ; and also upon an exception to that part of the report which related to the necessity of a sale instead of making an actual partition of the farm. The premises contained about 370

acres of land, and were, according to the master's report, worth $75,000; although they only produced an annual income of $1500. The farm was claimed and held under the will of Isaac Clason, who owned the premises in fee, and who died on the 1st of March, 1815. He devised the premises to his three sons, subject to a contingent charge upon the rents and profits in favor of their mother and to her legal right of dower, in the following words: " I give, devise and bequeath to my three sons, William Jones Clason, Isaac Starr Clason and Augustus Washington Clason, and the survivors and survivor of them the rents, issues and profits of all my real estate in the county of Westchester for the term of 20 years after my decease, subject to the claims of my said wife as herein before stated; the said rents, issues and profits to be divided equally between my said sons and the survivor of them. And if any of my said sons shall die before the expiration of the said term of 20 years, leaving a lawful child or children, such child or children shall be entitled to and receive such portion of the said rents, issues and profits as would have belonged to his, her or their father if living. And after the expiration of the said term of 20 years, I give, devise and bequeath all my real estate in the county of Westchester to my said three sons, their heirs and assigns, forever, equally to be divided between them. And if any of my said sons shall die before a division shall be made, leaving a lawful child or children, such child or children shall be entitled to and receive *such portion of the said estate as his, her or their father would have been entitled to if living;* and if any of my said sons shall die before such division shall be made, without leaving any lawful child or children him or them surviving, the portion of such son or sons so dying shall belong to the survivors or survivor of my said three sons, their or his heirs and assigns forever." W. J. Classon, one of the sons, died in 1824, leaving three infant children, one of whom died in 1825. The other two, William Oscar and Josephine, were defendants in this suit; and by their guardian ad litem claimed one half of the premises under this clause of the will of their grandfather. In April, 1820, Isaac Starr

Clason, another of the sons, conveyed all his interest in the premises to E. Lockwood, by an ordinary deed without warranty, under whom, by divers mesne conveyances, the complainant, at the time of filing his bill in this cause, claimed I. S. Clason's undivided third of the premises. The bill was filed nine days after the expiration of the 20 years from the death of the testator, and I. S. Clason, who died five days thereafter, was made a party defendant ; probably for the purpose of having the question decided whether his contingent interest in the premises could be released before the expiration of the twenty years. The suit was proceeded in without reviving it against the heirs at law of I. S. Clason. Upon the reference as to title, the master reported that the complainant was the owner of two thirds of the premises, and that the two infant defendants, the surviving children of W. J. Clason, were entitled to the other third. The guardian ad litem of the infant defendants excepted to the report in this respect, as well as to the decision of the master that a sale was necessary.

*Geo. Wood*, for the complainant.

*S. A. Foot*, for the infant defendants.

THE CHANCELLOR. There is no question as to the complainant's right to one third of the premises under the will of his father, or as to the infant defendants' right to another third. It is insisted, however, in behalf of the infant defendants that by the true construction of the will of their grandfather there was an executory devise in their favor of the one half of the share of their uncle Isaac Starr Clason, who died without issue before a division of the premises was made.

I think it is very evident from the whole of this will taken together, that it was the intention of the testator that if one of his sons died without issue after another had died who had children then surviving, such children should have the proportion of that share of the estate which their father would have taken if he had then been living. The doubt

which has arisen in this case is owing to the transposition of the two sections of that clause of the will which disposes of the Westchester property after the expiration of the twenty years. The first section of this clause declared, in terms, that the children of a deceased son should be entitled to and receive *such portion of the estate as their father would have been entitled to if living.* And if this had followed the section which gave the share of a son who died without issue to the survivor or survivors of the three sons, instead of preceding it, the intention would have been apparent and without doubt. It is perfectly clear from the whole will, that the testator did not intend to die intestate as to any part of the Westchester property ; and yet, upon the construction contended for by the complainant's counsel, if two of the sons had died leaving issue, and then the third son had died within the 20 years without issue, an event by no means improbable, the children of the two brothers who first died would neither of them have taken that share of the esttae under this executory devise, but the same must have gone to all the heirs of the testator generally. The previous clause of the will, in which the rents and profits of the same property are devised to the three sons, or their children, for the first 20 years, may very properly be referred to for the purpose of ascertaining the testator's intention in this succeeding clause which disposes of the ultimate fee in the estate itself after the expiration of the 20 years. And under such previous clause, had I. S. Clason died within the 20 years but subsequent to the death of the father of these infant defendants, they would unquestionably have been entitled to an equal share with their surviving uncle in the rents and profits during the residue of the term of 20 years. It becomes necessary, therefore, to inquire whether the ultimate remainder in fee in one third of the Westchester property became absolutely vested in possession in I. S. Clason at the end of the 20 years from the death of the testator, or whether such ultimate fee remained in abeyance until an actual division or partition of the farm should be made.

There can be no doubt in this case that the remainder in fee was vested in I. S. Clason 14 days previous to his death,

and that if he had not legally disposed of his interest previous to the 1st of March, 1835, he might then have made an actual partition or division so as to have put his absolute and indefeasible right to the inheritance beyond all doubt. And where an estate is actually vested in a devisee who is the natural object of the testator's bounty, the court ought not to favor a construction of the will which would have the effect of divesting the estate without any apparent object on the part of the donor. Here the testator shows a very clear intention to prevent his sons from having the absolute control of this part of his property for the first 20 years from his death. For such a suspension of the power of alienation it is obvious that many good reasons might have existed in the mind of the testator; as in another part of the will a division of the residuary personal estate was postponed till 1820, when and not till then it was to be divided among the three sons or their legal representatives. But when the time should have arrived when he intended to give to his three sons or their children the absolute control of the Westchester property, with the right to divide it among themselves immediately, I cannot conceive any possible motive that he could have had in making an executory limitation which would prevent them from granting a perfect title to a stranger, by a conveyance of the farm without an actual partition. And Lord Eldon, who was counsel for the complainants in the case of *Hutcheon* v. *Mannington,* (1 *Vesey, jun.* 366,) although he thought the decision was against the manifest intention of the testator in that particular case, as to which I think he was right, yet he admits it is an authority for saying that an intention of divesting the estate shall not be imputed to the testator in such a case, if the language used by him in his will admits of any other reasonable construction. (*See* 11 *Ves.* 497.) In the present case I think the will admits of a construction which leaves it doubtful at least whether the testator really intended to suspend the absolute power of alienation, after the expiration of 20 years, until an actual partition should be made. He evidently intended to prevent a division of the real estate for

20 years, as he had that of the personal property for a shorter period; and he probably contemplated a division of the one as he had actually directed of the other at the end of the prescribed term.

The conclusion at which I have arrived on this part of the case is that the limitation over to the survivors or survivor of the three sons or to their children in case of the death of either without issue *before a division should be made,* was not intended by the testator to refer to an actual division of the estate after the twenty years should have elapsed, but to the time itself which had been prescribed by him when a division could be made according to the terms of the will. I. S. Clason, previous to his death, was therefore seized of an absolute and indefeasible estate of inheritance in one third of the premises which would have descended to all his brothers and sisters or their descendants, as his heirs at law, if it had not been previously conveyed. And as this remainder was vested in interest at the time of the conveyance to Lockwood in 1820, as a conditional fee, the title to the same passed under that deed; and is now in the complainant by virtue of the subsequent conveyances stated in the bill and in the master's report. The first exception must for this reason be overruled.

Upon the subject matter of the other exception, however, I think the master has come to a wrong conclusion. A farm containing 370 acres of land must be very peculiarly situated to render it impracticable to divide it into three parts without great prejudice to the owners; especially where the court may decree a pecuniary compensation to be made by one party to the others for owelty of partition. (*See* 2 *R. S.* 330, § 83.) The question is not as supposed by the master, whether it would be for the benefit of the infants to have their shares of the estate converted into money instead of remaining in land producing a less income. For if it is for their interest to sell their shares for the purpose of a better investment, it may be done afterwards under the general law relative to the sale of infants' estates; and when they will not run the risk of having their interest in a large property sacrificed for want of funds to compete

with their adult tenant in common at the sale. The true question to be decided by the master, under the statute, is whether the whole property, taken together, will be greatly injured or diminished in value if separated into three parts, in the hands of three different persons, according to their several rights or interests in the whole : in other words, whether the aggregate value of the several parts when held by different individuals in severalty would be materially less than the whole value of the property if owned by one person. In this case, if the value of the land in different parts of the tract is nearly the same, the complainant would have a farm of about 250 acres for his share and worth $50,000, and each of the infant defendants would have a little more than sixty acres and worth about one fourth of that sum. And if some portions of the land are much more valuable than others, a greater quantity of that which is least valuable might be set off for the shares of the defendants, so as to increase the size of their farms. But if a sale is to take place under a decree in partition, as the guardian ad litem has no funds to enable him to bid upon the property for the infants, this property which is stated by the master to be worth $75,000 may be sacrificed for half that amount, unless the decree should contain special directions to the master not to sell it below a certain specified amount.

The second exception is therefore allowed. And the costs of both parties upon the exceptions are to be costs in the cause, to be apportioned upon the final decree.(a)

(a) The decision of the chancellor upon the construction of the will in this case was affirmed by the court for the correction of errors in December, 1837.