SARAH STAPLER and MARY E. STAPLER

*v.*

HELEN S. HOLLISTER and CHARLES G. HOLLISTER.

[Decided June 11th, 1913.]

1. Where lands sought to be partitioned are susceptible of actual partition, the court under *3 Comp. Stat. 1910 p. 3903 § 16,* may not order a sale unless a division will greatly prejudice the interest of the owners, which is a question of fact to be determined on the facts conceded and established.

2. The objects of a partition are to avoid the inconvenience resulting from a joint or common possession and to enable the persons entitled to take possession of and improve their respective shares.

3. That lands sought to be partitioned are subject to taxes and municipal liens, that they are unimproved and yield no income, that the title of the owners is an estate for life limited over to persons who may

not be *in esse*, which facts make it undesirable for the owners to improve the lands so as to make them yield an income, and that such owners being unable to convey a clear title cannot sell them for a reasonable price, does not justify a sale for partition, especially where the evidence discloses a steady growth in value since the death of the deceased owner.

4. The fact that the parties to a suit for partition hold an estate for life limited over to persons who may not be *in esse* furnishes no valid reason for a sale of the lands susceptible of actual partition, since the purchasers will acquire no better title than the parties have.

On *ex parte* hearing on pleadings and proof.

*Mr. William E. Blackman,* for the complainants.

WALKER, CHANCELLOR.

This bill is filed for a partition of the lands whereof John T. Stapler died seized, of which the parties are tenants in common. Title is derived under his inartistically drawn and somewhat peculiar will, which—(*first*) provides for the payment of his debts; (*second*) then gives the income of all his estate, real, personal and mixed, to his wife, Sarah, waiving her right of dower, as long as she remains his widow; upon her remarriage or death, one-half of the whole estate to go to his children, and they also to have the income of the other half for life, when it shall go to his grandchildren, if any; if none, then to his nearest blood heirs, as also all his estate, if he should have child or children or grandchildren living at the marriage or death of his wife; upon condition that if his wife is unmarried when the children become of age, they are each to have $10,000, which is to be taken from the one-half of the estate which they shall inherit; none of his property to be sold at private sale for less than cost of same, without its being first fairly offered at public sale; (*third*) his wife to have charge of the children, and have them reared and educated from the income of his estate, as long as she remains his widow; upon remarriage all her interest in the estate to cease, and also so far as any interest in his children goes that shall also cease, and the same, that is, both interests to be carried to his other executors; (*fourth*) appoints his wife, Sarah Stapler; his brother, Harry

Stapler, and his friend, William H. Skirm, executrix and executors.

The parties to this suit are his widow (who has conveyed her interest in the estate to Mary E. Stapler and Helen S. Hollister, wife of Charles G. Hollister, the daughters of herself and the testator, her late husband, John T. Stapler), and also Mary E. Stapler, Helen S. Hollister and Charles G. Hollister, her husband.

Upon the death or remarriage of the widow, the two named children are each entitled to an estate in fee-simple in the equal undivided half of all the lands and real estate whereof the father died seized. When the children became of age they, if the widow be living and unmarried, were to have $10,000 each, to be taken from the half so given to them. The two children are also, at the death or remarriage of their mother, to have the income of the other half of the estate for life, after which it shall go to his grandchildren, if any, or if none, then to his nearest blood heirs; as shall all his estate, if he should have no child, children or grandchildren living upon the marriage or death of the widow.

The real estate sought to be partitioned consists of the following four several tracts of land (called three in the bill of complaint), namely—*first,* a lot situate upon the easterly side of Stuyvesant avenue in the city of Trenton, at the southeasterly corner of Laurel street, fronting one hundred feet on Stuyvesant avenue and extending in an easterly direction eight hundred and ninety-seven feet, to the line of land of the Delaware and Bound Brook Railroad Company; *second,* lot number nineteen on the plan of lots of the Hamilton Land Association, situate on the north side of South Broad street, fronting twenty-five feet on Broad street, and extending northerly at right angles to Broad street, one hundred and forty-seven feet to a twelve-feet wide alley; *third,* lot number twenty on the same plan of lots, adjoining lot number nineteen and of the same dimensions and of like description; *fourth,* lot number sixty-eight on the same plan of lots situate on the south side of Genesee street, fronting twenty-five feet on Genesee street and extending at right angles

thereto one hundred and sixteen feet in depth to a twelve-feet wide alley.

These lots are unimproved, vacant lots, and are unproductive of income.

The master to whom this matter was referred was, among other things, directed to ascertain and report the nature, circumstances and situation of the property, and whether the lands are so situate that a partition thereof can be made without great prejudice to the owners thereof, and to state the facts upon which his opinion is founded; and also to ascertain and report whether the interests of the owners require, or would be promoted, by a sale of the lands, and the reasons upon which such opinion is founded. He has reported, *inter alia,* as follows:

"I find and report that the said lands cannot be partitioned or divided amongst the said owners thereof without great prejudice to their respective interests; and my principal reason therefor is the great uncertainty that beclouds the title at present because of the limitations upon the same by the creation of the said estate in remainder or expectancy as well as by other reasons hereinafter mentioned. I also find and report that the interest of the owners of said land require and will be greatly promoted by a sale thereof, for the following reasons: The said lands are all unimproved and unproductive city lots, yielding no income whatever, but subject to heavy assessments for taxes, and for the erection of sewers and pavement of streets and the like; and from a consideration of all the facts and circumstances connected with, and surrounding these lands, there is no reasonable probability that they will improve in value, in their present state at all, in comparison with the interests which would accrue to the owners thereof in case of a sale, so that they could have a free and unencumbered title."

The evidence taken before the master, and upon which he bases his report, shows the unimproved, unencumbered and unproductive condition of the several tracts; that yearly taxes are assessed upon them, and that sewer assessments and assessments for street paving as to the two South Broad street lots, have been levied, and that the parties cannot make a good and marketable title to the lands. As to the Stuyvesant avenue tract,

Mrs. Stapler testifies that her husband died in 1891; that in the first year after his death the taxes upon the tract were $48, and that in 1910 they had increased to about $187. As to the other three properties she testifies that the taxes have also increased (she does not say how much), but not to such an extent as those on the Stuyvesant avenue tract; that the Stuyvesant avenue tract is favorably located and has been recently nearly surrounded with new buildings. She adds: "I think that by selling the properties now there could be a good profit made for the heirs." She expresses a preference for a sale rather than a partition, and says: "The reason that I don't want partition is because we would be no better off than we are now, since under the will we could convey no property."

The only further testimony is that of real estate dealers, who testified substantially and in practically the same terms, that the interests of the owners require and will be promoted by a sale of the properties. The reasons they give for this opinion are—*first,* that the lands are unimproved and there is no profit arising from them; *second,* there are yearly charges in the way of taxes, and may be in the way of sewer, street and other improvements; *third,* the impossibility of the present owners making a good title to the lands in case of a division among them; *fourth,* there would be no inducement for them to build, or make any improvements, since by the chance of death, without heirs to take under the will, all investments in these properties would be forfeited; *fifth,* the character and style of houses in the neighborhood has been fixed by the erection of inexpensive dwellings, and that the lands are not likely to appreciate in value in a ratio to the interest, taxes and other expenses incident to holding them; *sixth,* in case of a division, and the separate owners desired to sell, no one would buy for any reasonable price because the owner could convey no good title.

I cannot agree with the master, whose opinion I do not think is justified by the proofs. I am of opinion that these lands are partible, and that no condition or circumstance that would make a division inequitable is shown to exist.

The law governing the case is fixed by the statute, and repeated adjudications.

The act concerning partition (*Comp. Stat. p. 3903 § 16*) provides, that if it shall appear by satisfactory proof that the land or real estate cannot be partitioned among the owners, without great prejudice to their interests, it may be ordered to be sold.

It is obvious that these lands are susceptible of actual partition. Whether such division will greatly prejudice the interests of the owners, is the only question for adjudication. This is purely a question of fact, and must be determined upon the facts conceded and established by the evidence.

It has been held that the circumstances which will render a partition injurious must usually relate to the land itself, and that the mere complication of the owners' interests does not necessarily render partition injurious to the owners, or any of them. *Freem. Co-ten. & P. § 537,* citing *Vesper* v. *Farnsworth, 40 Wis. 361,* in which the court observed:

"So far as we can perceive, the order rests entirely upon the fact that there is an outstanding life estate in a portion of the premises. But for that circumstance, it seems, so far as it yet appears, that an actual partition of the land is entirely practicable. If partition could be made in that case without great injury to the owners, it is not very apparent how a change in the relative interests and rights of the owners can render an actual partition so disastrous to them. To illustrate: A, B and C own a farm in common, and actual partition can be made between them without injury to either. But A, in addition to his one-third interest in the farm, acquires a life estate in one-half of the interests of B and C. How can that circumstance alone render an actual partition of the farm injurious to the owners or either of them? The same difficulty in making partition in the latter case would arise in making division of the proceeds, should the farm be sold. It seems to us that the circumstances which will render a partition injurious must usually relate in some way to the land itself, its location, condition, quantity and the like, and that mere complication of the owners' interests, having no relation to these, does not necessarily render partition injurious to the owners or any of them."

In *Smith* v. *Trustees, &c., 36 App. Div. 387, 388,* the court refused an application for an order for sale, and said:

"We see no difficulty in an actual partition of the property. It can be divided in any direction into two equal parts, or if the values of different sections of the bay are unequal, it can be divided into more than. two parts, so that an equitable partition is comparatively easy. In *Chittenden* v. *Gates, 18 App. Div. 169,* we affirmed a judgment directing an actual partition of a long, narrow beach or tongue of sand, lying between the ocean and Jamaica bay, on the ground that it was difficult to see how any property was more susceptible of division than property of this character. The reasoning of that opinion applies with equal force to the premises in question."

In *Clason* v. *Clason, 6 Paige 547,* Chancellor Walworth says:

"The true question to be decided by the master, under the statute, is whether the whole property, taken together, will be greatly injured or diminished in value if separated into three parts, in the hands of three different persons, according to their several rights or interests in the whole; in other words, whether the aggregate value of the several parts, when held by different individuals in severalty, would be materially less than the whole value of the property if owned by one person."

The objects of a partition are to avoid the inconvenience that results from a joint or common and united possession, and to enable the persons entitled to know, take possession of, and improve their respective shares. *Stevens* v. *Enders, 13 N. J. Law (1 Gr.) 271, 275.*

The only facts established by the testimony taken before the master are—*first,* that the lands are subject to the payment of taxes and other municipal liens, as are all lands; that they are unimproved and yield no income to the owners; that the title of the owners is an estate for life limited over. That latter fact, it is alleged, makes it undesirable and unattractive for the owners to improve the lands so as to make them yield an income, as such investment would be lost to them upon the termination of their life estates, and that, being unable to convey a clear title, the lands could not be sold for a reasonable price. It is said that the lands are not likely to appreciate in value, but

the evidence discloses a steady growth in value since the death of Mr. Stapler.

There appears nothing relating to the land itself, its location, condition or quantity, of a character that would cause a partition to prejudically affect the interests of the owners. The complication arising from the estates created by the will is given prominence as a reason for a sale of the lands. All three of the witnesses seem to have based their opinions upon the assumption that by a sale of the land a purchaser would acquire a title thereto in fee-simple discharged of the limitations created by the testator.

*Campbell* v. *Cole,* 71 *N. J. Eq.* (1 *Buch.*) 327, is cited as authority for a sale in lieu of an actual partition in this case. In *Campbell* v. *Cole* it is said that sale may be made notwithstanding a share held by a tenant in common is less than a fee, whenever it shall appear that the land is so situated that partition cannot be made without prejudice to the persons interested, and Chancellor Magie held that the court had power to order a sale, the master having reported, upon evidence that was clearly competent and conclusive, that the lands were incapable of being actually partitioned. That case, therefore, does not apply.

I cannot see that the status of the parties to this suit will be appreciably changed by either a division or sale of these lands. If they are partitioned they will retain the same title to their respective shares as they now have in the undivided whole; and the purchaser or purchasers thereof, if sold, would acquire no better title. Partition produces no effect upon or alteration in the estate of the respective parties, although it severs the possession; and each party thereafter instead of being seized of an undivided interest becomes seized in entirety of his share, and the occupation and estate which before were in common become several and distinct. *Den* v. *Howell,* 20 *N. J. Law* (*Spenc.*) 411, 416.

The fact that the parties hold an estate in these lands for life, limited over to persons who may not now be *in esse* (although by the statute this court, under proper conditions, can order

their partition or sale), furnishes no valid or effective reason for sale in this proceeding.

My conclusion is that the land is partible and that no great prejudice to the interests of the owners will result from a partition. I will appoint commissioners to make an actual partition if application shall be made therefor.