*G. A. Davis* and *E. C. Peters* for defendant.

---

MAY K. BROWN *v.* HENRY HOLMES, TRUSTEE, GEORGE H. HOLT, AND VALENTINE S. HOLT, WATTIE E. HOLT, AMELIA A. HOLT, JAMES R. HOLT, HELENE A. HOLT, IRENE N. HOLT, MINORS, AND HELEN A. CUSHINGHAM, GUARDIAN OF SAID MINORS, THERESA M. LOUISSON, MARTHA BERGER, MAKAHA COFFEE COMPANY, LIMITED, AND FREDERICK E. STEERE.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED DECEMBER 24, 1908.          DECIDED JANUARY 2, 1909.

HARTWELL, C. J., WILDER, J., AND CIRCUIT JUDGE DE BOLT IN PLACE OF BALLOU, J.

PARTITION—*cotenant's right to,—allowance for improvements—finding that partition in kind is not possible.*

> A cotenant is entitled to a partition of his share in the common estate, or a sale if partition would greatly prejudice the parties. The fact that there are minor cotenants unable to purchase does not affect such right.
>
> A cotenant cannot be allowed in case of sale for money expended for improving a small portion but not materially enhancing the value of the entire estate.
>
> A finding that under the circumstances of this case a partition in kind is not possible is not reversed for error.

OPINION OF THE COURT BY HARTWELL, C. J.

This was a petition filed September 7, 1907, praying for partition of a certain leasehold if capable of being partitioned with-

out great prejudice to the parties interested, otherwise that it be sold and the proceeds divided according to their respective interests.   There was no dispute about the titles alleged, namely, that the plaintiff is entitled to 4-9 of the leasehold of certain lands at Makaha, Waianae, in the County of Oahu, under a lease of November 22, 1862, to John D. Holt for the term of his natural life, 2-9 of her shares being subject to a mortgage to the defendants Theresa M. Louisson and Martha Berger, the Makaha Sugar Co. and Steere being sublessees of certain portions of the land, the other defendants being entitled as follows: Holmes, Trustee, 3-9, George H. Holt 1-9 and the remaining six defendants, who are minors, being entitled to 1-54 each. The appellant's answer alleges that the lease covers the ahupuaa of Makaha, a large tract of land of irregular shape "consisting of a valley extending from the sea to the higher points of the Waianae mountains, Oahu, and including several branching valleys and ridges, cliffs, ravines and watercourses;   That a portion of said tract is level and capable of cultivation, and that other portions are covered with dense growths of forest and with lantana and other underbrush and is wholly unfit for cultivation;   That by reason of the character of said lands it will be impossible for this court to make an equitable partition of said leasehold among the various persons who own interests therein;" that the leasehold "has no salable or market value for the reason that the term thereof is for the life of one John D. Holt, who is now, as respondent is informed and believes and on information and belief alleges, of about the age of eighty (80) years; and this respondent alleges that the sale of said leasehold under these proceedings would greatly prejudice the interests of this respondent and of all others having an interest therein, and would be inequitable and unjust and would serve no good or useful purpose," and that a partition or sale during the minority of the minor defendants would seriously and irretrievably prejudice their interests as they have not funds

to purchase if a sale be ordered and that a sale would deprive them of a valuable interest as tenants in common.

No opposition was made except by the appellant. The judge appointed a commissioner to examine the land "with reference to the feasibility of making an equitable partition" who reported that the land of Makaha comprised a valley on the western flank of Mt. Kaala running with narrowing width from the sea to the summit of the main Waianae range containing some thirty-six acres and adjoining Makaha proper; that the area given in the original survey was 4969 acres. "The seacoast is mostly of a sandy character broken by a sharp and rocky promontory called Mauna Lahilahi and ending in a long and sweeping point of rocks. There are two landing places. Adjacent and approximately parallel to the shore runs the Oahu Railway & Land Co.'s railroad track, and parallel to this but somewhat farther inland is the public road, from which branch roads run to the railroad station and landings and inland to the head of the valley. The bounding ridges on the north and south, except near the head of the valley, are very rocky and quite precipitous with a wide sloping talus on either side. At the mouth of the valley and extending somewhat more than half way up toward the head is a large area of flat tillable land covered in most places by brush and algaroba trees and flanked by the rocky slopes just mentioned. The tillable land practically ends at the old homestead. Above this there is some coffee and taro land near the stream flanked by grazing land on the rocky slopes on either side. On the south side toward the head of the valley the land is of a mountainous character with a scant forest growth, which is in great part included in the leases to the Makaha Coffee Company and F. E. Steere. In the upper part of the valley there is a stream of varying volume, which is diverted above the homestead and led by various little ditches down on to the arable land. Situated on the leeward side of the Waianae Range the rainfall is very light and the lower portion of

Brown v. Holmes, 19 Haw. 268.

the valley is quite arid. Attempts to obtain water by sinking wells have not been successful, and the only source of water at present for irrigation is the valley stream. There is a fishery belonging to the land extending something over a mile from the shore but it is of somewhat doubtful value."

"The sandy strip between the shore and the railway line could be readily subdivided into lots proportionate to the numbers 1, 1, 3 and 4, which I understand represent the relative interests involved; these lots being so arranged that each lot would have access to and frontage on one of the landings, the area occupied by the rocky knob called Mauna Lahilahi being considered as valueless.

"Adjoining the railroad and extending to the first rise of ground is a large area, perhaps as much as 400 acres, of fine level land of very uniform character. This could also be readily subdivided into lots with areas proportionate to the interests involved.

"Above this is another tract of good arable land of varying quality and of irregular outline bordered and somewhat broken up by rocky strips. This, I believe, could also be subdivided in kind, but the number and size of the lots could only be determined after a careful survey. The principal difficulty in subdividing this would be in determining the exact limits between the rocky and the tillable portions, and in segregating the various classes of soil. To divide this tract in kind may necessitate its subdivision into ruinously small parcels. Because of the brush covering it, this can only be settled by a survey and plot of the land.

"There is no serious difficulty, aside from the multiplicity of lots, in subdividing the grazing land on the rocky slopes. The precipitous land on each side of the valley could be treated as practically valueless, and the bounding lines of these lots run to the summits of the two bounding ridges without prejudice to the parties at interest. This grazing land would have to be subdivided in three blocks,—one on the south side of the valley and two on the north.

"On the south side of the valley between the leases to F. E. Steere and the Makaha Coffee Company there is a piece of semi-wooded mountain land, which can be subdivided into lots of

proportionate area, running from near the stream to the summit of the bounding ridge on this side.

"There is still left to be considered some 17 acres of coffee land lying along the south side of the stream and various parcels of taro land. Leaving out of consideration the question of situation with respect to the water supply, which is practically the same for all these parcels, they can be subdivided without much difficulty. The subdivisions would necessarily be small, but with taro land that is not much of a drawback.

"I think that I have indicated with sufficient detail how the land by itself might be partitioned in kind without prejudice to the parties at interest. The expense involved in surveying and subdividing and in fencing the various lots of grazing land would be considerable and I doubt if it would be warranted considering the indefinite term of the leasehold.

"APPURTENANCES TO THE LAND. I have hitherto considered only the land by itself but there are various appurtenances of the land that must be taken into consideration in any attempt to make an equitable partition. Starting from the seashore, we may list these as follows:

"I. THE FISHERY. This could be easily partitioned in kind.

"II. TIMBER AND OTHER GROWTH ON THE LAND. The arable land is covered by a growth of young algaroba trees. This is distributed with fair uniformity and is not of sufficient size to make any great difference in such a subdivision as I have outlined. There are, however, various fruit and other trees within the homestead inclosure that cannot be equitably partitioned with the land except by making the parcels too small to be of value.

"III. IMPROVEMENTS STANDING ON THE LAND. These comprise various fences and walls, some large buildings now occupied by Chinese tenants, a large dwelling house at the homestead, a stonelined reservoir for water and various ditches for conducting it on to the land, about 17 acres of growing coffee trees, and other improvements of less value. Except the coffee trees, these improvements obviously cannot be partitioned in kind with the land.

"IV. THE WATER SUPPLY. This and the improvements just mentioned constitute the greatest difficulties in the way of

an equitable subdivision of the property.  In the head of the valley is a comparatively good stream of water, which is augmented by springs as it flows down.  In places part of the water disappears under ground to reappear again farther along.  Finally, near the homestead what water is not drawn off disappears altogether.  The elevation of the stream is such that the water can be easily conveyed to any part of the tillable land.  At the time of my visit there was sufficient water flowing in the stream to irrigate as much as 200 acres of cane land.  In dry seasons I am told that the stream at times runs dry.  As I have already stated, this stream is the only available source of water for irrigation, without which the lands in the lower part of the valley could not be cultivated and would not be of any value at all for farming and of no great value for cattle raising.

"There are only two feasible methods of partitioning the water: (1) by means of a partition weir, (2) by a time distribution.  The first would involve the construction and maintenance of a separate and elaborate system of ditches leading to the lands of each party in interest, which, considering their uncertain tenure, is alone sufficient to condemn it as impracticable.  To partition the water by allowing each party to use it for a length of time proportional to his interest with some central authority to supervise and regulate such use and to keep the water ways in repair is entirely practicable; but unless some convenient system of regulation and control can be agreed upon by the parties at interest, the water supply like the improvements on the land is incapable of partition in kind.

"FUTURE DEVELOPMENT OF RESOURCES.  So far I have avoided the discussion of the latent resources of the land.  One riding over it is struck by its undeveloped possibilities, such as the increase and conservation of the water supply, the raising of dry land crops like sisal and cocoanuts on the lower flats, the utilization of the elevation of the stream for the development of power, and the possible quarrying of sandstone and other stone for building purposes.  A partition of the land would undoubtedly be prejudicial to the best and greatest development of these latent resources, and by no scheme of partition would it be possible to make an equitable distribution of them.

"SUMMARY.  Physical features alone considered, I believe that an equitable partition of the property included in the lease-

hold could be made on the basis of its present condition without prejudice to the parties at interest; provided that the improvements on the land were excepted from such partition by mutual agreement and some central authority were constituted for the control and distribution of the water supply. Unless the improvements on the land are excepted and some satisfactory arrangement is made for the mutual control of the water supply, an equitable partition of the property is not feasible.

"The question as to whether any subdivision requiring considerable expenditure for surveying and fencing is justifiable under the uncertain tenure of the parties at interest, I leave for Your Honor to decide."

Other evidence relating to the land was adduced at the hearing showing the uses which had been made of it and those of which it was susceptible, also that two irrigation ditches had been made by the appellant at an outlay of $200, and that he had cleared and plowed and in part planted about 100 acres.

The judge said that from the commissioner's report he was of opinion "that partition of the land in kind is not possible," adding: "From the evidence it appears that several of the tenants in common have used small portions of the land for cultivation, have pastured stock on the land and sold firewood therefrom.  George H. Holt, one of the tenants in common, has dug a ditch at a cost of approximately $200.00 for the purpose of conveying water for irrigation to a small area that he cultivated. He claims to have received $1000.00 for watermelons raised on the land last year and $400.00 from the sale of cattle raised on the land.  His counsel contends that a sale of the lease would result practically in a destruction of the property partitioned. Plaintiff is entitled to partition as a matter of right, 145 U. S., 116, and the fact that the duration of the estate depends upon the life of a man 70 years of age cannot affect her right."

"It does not appear that the value of the property has been enhanced through the improvements claimed to have been put on the land by George H. Holt."

Thereupon it was decreed that a sale by a commissioner be made and that the proceeds, after payment of costs, be divided among the parties according to their respective interests, from which decree, dated September 12, 1908, this appeal was taken by Geo. H. Holt.

The appellant submits that a sale would mean practical destruction of the leasehold interest, the principal witness for the petitioner having testified that at the best the lease, if sold, would bring $2 000 and that it would be a gamble even then whether the purchaser would succeed in making his purchase price out of his investment; that no one would bid any reasonable amount upon a leasehold depending upon the life of a man past sixty-nine years of age, while a considerable sum per annum is now obtained from the property; that the sale was ordered upon insufficient showing that a partition could not be made, referring to the statement in the master's report: "I think I have indicated in detail how the land by itself might be parti tioned in kind without prejudice to the parties at interest. The expense involved in surveying and subdividing and in fencing the various lots of grazing land would be considerable and I doubt if it would be warranted considering the indefinite term of the leasehold." It is urged that the interests of the minor defendants would be greatly prejudiced by a sale, citing *Clason v. Clason*, 6 Paige Ch. 541; *Claxton v. Claxton*, 56 Mich. 557.

The appellant also claims that the court erred in making no allowance to him for his improvements because they did not enhance the value of the entire estate and that the evidence did not tend to support this conclusion, but although the small ditch built by him would not appreciably enhance the value of the entire estate it did enhance that of the small piece planted by him so that if a partition in kind had been ordered he should have been awarded the land which he had improved and should have been allowed the value of his improvement in case of sale.

· The plaintiff contends that she is entitled as of right to a sale if a partition is not fair and practicable, and refers to J. F. Brown's testimony that Makaha "is composed of every kind of land that is found in the Hawaiian Islands, that is to say, agricultural land, taro land, grazing land, mountain land, forest land," adding, as shown by the commissioner's report, "a sea fishery, beach lots, water supply, improvements and undeveloped possibilities," and submits that where, as here, the improver was aware of his title and made improvements without consent of cotenants he is not entitled to an allowance and that where they do not enhance the value of the entire land he should not be allowed for their value.

"A writ of partition lies at common law for one or more parceners against the other or others," Freeman on Cotenancy and Partition, Sec. 420, the reason being "that as tenancy in coparcenary arose by operation of law, it was only proper that the law should afford the means of severance." 3 Pomeroy's Equity Jurisprudence, 2 ed. Sec. 1386, n. 5. "By stat. 31 Henry VIII., c. 1. tenants in common and joint-tenants of estates of inheritance held in their own rights, or in that of their wives, were compelled to make partition in 'like manner as parceners by the common law of the realm were compelled to do.'" Freeman, Sec. 421. "As early as the reign of Elizabeth, partition became a matter of equitable cognizance; and now the jurisdiction is established as of right in England and in the United States." Pomeroy, Sec. 1387. It is clear that partition either of the estate or of the proceeds of its sale is a matter of right. *Willard v. Willard*, 145 U. S. 120.

By statute a sale may be ordered and the proceeds divided if partition in kind cannot be made "without great prejudice to the parties." Sec. 1648 R. L. The finding of the judge that a partition in kind was not possible, meaning that it was impossible without great prejudice to the parties, was based upon the commissioner's report and consideration of all the facts therein presented and alluded to in other evidence.

The varied conditions of the property, the variety of uses to which different portions can be put, the absence of profitable use to which much of it is susceptible without large expenditure of time and money, and taking water from non-agricultural to agricultural land,—all this presents a complicated problem, the solution of which, without sacrifice of, or injustice to, the interests of some one or more of the cotenants, is extremely difficult. Considerable discretion must be allowed in determining whether or not under all the circumstances partition would greatly prejudice the common interests. On the other hand, the uncertainty of the tenure and the chances of its early termination might prevent a sale for a sum of money which, when divided among the cotenants, would equal the profit which each of them can make out of the property during the balance of the term of the lease. We cannot say that upon all these facts and obvious considerations it is sufficiently clear that the judge abused the discretion which the case required him to exercise to justify us in reversing his finding on the ground that it was not sustained by evidence.

The appellant's expenditure of money in making ditches, clearing and plowing and planting might entitle him to have the improved portion set apart for or on account of his share if a partition were made, but it would be impossible on a sale of the premises as a whole to say how much higher price was obtained by reason of this expenditure.

The court can properly guard the interests of the minors by declining to confirm a sale which clearly sacrificed their interests or those of any of the other defendants, the fact that none of them had money to purchase not depriving the plaintiff of her right to a partition or a sale if a partition in kind would be extremely injurious to all concerned.

Decree affirmed.

*J. W. Cathcart* and *A. G. M. Robertson* for plaintiff.

*W. W. Thayer* for George H. Holt, appellant.