# PIONEER MILL COMPANY, LIMITED, *v.* VICTORIA WARD ET AL.

## No. 2540.

S<small>UBMITTED</small> J<small>ANUARY</small> 18, 1945.　　　　　　D<small>ECIDED</small> J<small>UNE</small> 1, 1945.

K<small>EMP</small>, C. J., P<small>ETERS</small> <small>AND</small> L<small>E</small> B<small>ARON</small>, JJ.

OPINION OF THE COURT BY KEMP, C. J.

This is an appeal by Victoria Ward, Limited, and Victoria Kathleen Ward, two of the fifteen respondents in an equity proceeding brought by Pioneer Mill Company, Limited, to partition certain lands on the island of Maui, Territory of Hawaii, owned by the petitioner and the respondents as tenants in common.

For a statement of the fractional interest in said lands owned by the petitioner and the several respondents, see the opinion of this court on a former appeal reported in 34 Haw. 686, 688. The correctness of that statement of interest is not questioned. No change in the ownership of said lands was alleged or shown since the first trial except as to the interest of the respondent, Caroline J. Robinson, who died after the first trial and prior to the second. The petitioner suggested the death of the said respondent, and a writ of revivor issued making the executors of her will and trustees of her estate parties in her place and stead, and thereafter (before final decree) they conveyed their interest to the appellant, Victoria Kathleen Ward.

The contents of the pleadings upon which the first trial was had and the decree entered thereon, with exceptions hereinafter noted, are sufficiently stated for the purpose of

this opinion in the former opinion of this court reported in 34 Haw. 686, 708, and need not be repeated here.

In paragraph VIII of the original petition, petitioner admitted a mortgage against its undivided interest held by Bishop Trust Company, Limited, and in paragraph IX alleged that the county of Maui claims or may claim an easement for purposes of a public road 30 feet wide across lot 1-A. In paragraph X of the original petition petitioner asserted that it did not know of any mortgages, leases, or other encumbrances upon or claims to any of said lands except the aforesaid mortgage and easement of right of way set out in paragraphs VIII and IX. In the first amended petition it was alleged that the Territory of Hawaii claims "to be the owner in severalty in fee simple of a public right-of-way 30 feet wide, running across lot A-1 of the said land * * * that the County of Maui claims some interest in the said right-of-way."

The first decree, which ordered partition in kind with instructions to the commissioner to set off to the petitioner as far as practicable the improved portions of the land without taking into account the value of the water tunnel, railroads, improvements and crops, which the circuit judge held were the sole property of the petitioner, was reversed. The reversal of that decree resulted from our finding from what appeared to be all of the available evidence that the water tunnel, railroads, and other improvements, were not the sole property of the petitioner but were the property of the cotenants in proportion to their respective shares or interests in the lands.

In remanding the cause for further hearing, we said: "Holding as we do that the structures and improvements placed upon the land are not the sole property of the petitioner but, on the contrary, are the property of the parties hereto as tenants in common to the extent of their respective interests in the lands subject to partition, the decree

must be reversed not alone as to its findings upon the issue of ownership but also as to its findings upon the issue of whether the lands are susceptible to partition in kind and the cause remanded for further hearing upon the latter issue." 34 Haw. 686, 707.

At the trial, after the remand, the petitioner sought to further amend its petition by alleging for the first time the following:

"That Lahaina Agricultural Company, Limited filed an application Nod. [sic] 485 in the Land Court of the Territory of Hawaii on October 15, 1920 to register title to its undivided interest in said lands to which it alleged it was entitled as owner fee simple, excepting certain rights-of-way therein designated as a right-of-way vested in the Territory of Hawaii 30 feet wide for a public road across Lot 1; a right-of-way 20 feet wide for a railway of your Petitioner across Lot 3 (being the Petitioner's main railroad right-of-way across said lot); a right-of-way 20 feet wide for a railway of your Petitioner across said Lot 3 (being a spur or branch line); and a right-of-way 20 feet wide for the tunnel of your Petitioner across Lot 7; that after reference of said application in the Land Court to an Examiner of titles said Lahaina Agricultural Company, Limited proceeded with said application and notice of said application and of the date, time and place of hearing thereof were duly published in a newspaper as required by law; and thereafter on February 26, 1921, Henry P. Robinson (the predecessor in title of the respondent Victoria Kathleen Ward) filed an Answer in which he admitted that your Petitioner was entitled to some interest in fee simple in the land described in said application, but denying that the applicant was entitled to 522/896ths interest in fee simple or any interest in said land which did not recognize and concede that said Henry P. Robinson was entitled to the share and interest thereinafter set forth,

and that said Henry P. Robinson was the owner of an undivided 68/896ths share or interest in the fee simple estate in said land, and prayed that the undivided 522/896ths interest in said land claimed by the Applicant be not confirmed and registered, and for such other and further relief as to said Land Court may seem just and proper in the premises; said Answer was duly verified; that on the same day February 26, 1921, Caroline J. Robinson formerly a respondent herein, but now deceased, filed an Answer similar in all respects to that filed by said Henry P. Robinson in said Land Court preceeding claiming, however, that she was the owner in fee simple of an undivided 21/896ths interest in said land; that on the same date, February 26, 1921, Victoria Ward, formerly a respondent herein but now deceased, filed in said land Court proceeding an Answer similar to that filed by said Henry P. Robinson, except that she claimed to own in fee simple an undivided 49/896ths interest in said Land; upon a hearing of said application that thereafter on November 17, 1921, a decision was rendered and filed in said Land Court Proceeding by the Judge of the Land Court, and thereafter on December 5, 1921, a Decree was made and entered in the Land Court in said Application whereby it was adjudged and decreed that said Lahaina Agricultural Company, Limited was the owner in fee simple of an undivided 634/896ths share or interest in all of the said pieces of land described in paragraph 4 of the original Petition filed herein on May 14, 1930 and the Land Court further adjudged and decreed in said proceedings that said land be brought under the operation and provisions of Chapter 178 of the Revised Laws of Hawaii, 1915, as amended, and that the title of said Lahaina Agricultural Company, Limited to said land be confirmed and registered, subject to the encumbrance mentioned in Section 3171 of the Revised Laws of Hawaii which might be subsisting, and subject also to:

"1. A right-of-way 30 feet wide for a public road across Lot 1, more particularly described in said Decree;

"2. A right-of-way 20 feet wide for a railway of the Pioneer Mill Company, Limited, your petitioner herein, across Lot 3 which covers the main railroad right-of-way across said Lot shown on the Land Court Map;

"3. A right-of-way 20 feet wide, for a railway of the Pioneer Mill Company, Limited across Lot 3 which covers the spur track or branch line shown on the Land Court map; and,

"4. A right-of-way, 20 feet wide, for the tunnel of the Pioneer Mill Company, Limited, Petitioner herein, across Lot 7, the center line being described in said Decree by true azimuths and distances as follows:

" 'Beginning at a point on the Southwesterly edge of the Waikiki Branch of the Honokowai Valley 348° 23' 21.5 feet from an iron pipe at the end of Course 1 in the foregoing description of Lot 7, and running:

" '1.   69° 32' 1076.6 feet to the South boundary of Lot 7.

" 'The said four rights-of-way are vested as follows:

" 'No. 1, in the Territory of Hawaii, and Nos. 2, 3, and 4 in Pioneer Mill Company, Limited.'

"That thereafter and pursuant to said Decree a Land Court Certificate of Title was issued by the Assistant Registrar of the Land Court to said Lahaina Agricultural Company, Limited, for its 634/896ths interest in said land except said rights-of-way; that the Respondents Victoria Kathleen Ward, Caroline J. Robinson, and Victoria Ward, and the trustees under their wills and their successors in title and interest in said land are bound and concluded and estopped by said Land Court proceeding and said Decree from now asserting that they have any estate, right,

title, or interest in said 4 rights-of-way excepted and decreed to be vested in the Territory of Hawaii and your Petitioner respectively as aforesaid; that said decree is res judicata of the ownership of said railroad rights-of-way and tunnel right-of-way through Lots 3 and 7 respectively as aforesaid."

Throughout the trial the circuit judge refused to permit the amendment, but in his written decision filed one month after the trial was concluded, he reversed his ruling and explained his disposition of petitioner's proposed amendment as follows:

"The motion to amend the Petition in this regard was denied, the Court at the time believing that despite Section 4097 the proposal to thus amend the Petition was untimely in that it should have been made at the original hearing, and that its allowance would militate against the directive issued to the Circuit Court by the Supreme Court.

"Respondents' position on this matter is not that which the court had in mind at the time of its ruling. Respondents' argue that the ruling is correct because it was not within the province of the Land Court to adjudicate other than the right of the applicant, citing *In re Rosenbledt 24 Haw. 298.*

"As I now see the problem a good deal clearer than during the trial, and having the assistance of counsel on the point, I believe that my ruling on this motion at the trial was in error. I therefore set it aside at this time, grant the motion to amend and accord the Respondents involved full and complete exceptions. The reversal of the ruling made at the hearing is based upon (a) the equitable nature of the proceeding (b) Section 4097 (c) Chapter 144, Revised Laws 1935, as amended relating to the Land Court, particularly Section 5045 and 5047 thereof (d) In re Bishop Trust Co., Ltd., 35 Haw. 816, at 821 (e) the fact that the Respondents herein and above identified appeared

and answered in the Land Court proceeding, thus distinguishing the case of In re Rosenbledt supra, and (f) the fact that as this case has the jurisdictional ingredients for an appeal to the Ninth Circuit Court of Appeals, the Supreme Courts directive, while entitled to great weight, is not conclusive as the 'law of the case', *Goo vs. Hee Fat 35 Haw. 827 at 830. See also Carey vs. Hawaiian Lumber Mills, Limited 21 Haw. 506 at 509.*

"It thereof [*sic*] may be settled at this time that as to the Respondents Victoria Ward, Limited, Victoria Kathleen Ward, and the trustees of the Estate of Caroline J. Robinson, they are by Petitioner's Exhibit 12 estopped to deny Petitioner's right-of-way over their interests in Lot 3 for a railway as the same existed at the time of the Land Court proceeding—to-wit, 1921—and likewise as to a right-of-way for a tunnel on Lot 7. No other Respondents are thus estopped."

The interlocutory decree entered following the filing of the opinion sufficiently indicates the additional contents of the decision. The substance of the interlocutory decree follows:

1. That the petitioner and the respondents named below are the owners in fee simple as tenants in common in the following shares of the land, except the public road hereinafter described:

| | |
|---|---|
| Petitioner, | 85.588% |
| Victoria Ward, Ltd., | 5.470% |
| Victoria Kathleen Ward, | 6.250% |
| Caroline J. Robinson Estate, | 2.345% |
| Kukeas (jointly), | 0.089% |
| Kaleiwaheas (jointly), | 0.063% |
| Thomas Duncan, | 0.195% |

2. That the Territory of Hawaii is the owner in fee simple of the public road that runs through lot 1, containing an area of 0.29 acre, which will be excluded from

the partition, thereby reducing the area of lot 1 from 28 acres to 27.71 acres;

3. That 2.5 acres of taro land in lot 5 is the only portion entitled to an ancient water right;

4. That all the improvements and structures on the said land to be partitioned form part of the common property, and all the parties having at present an undivided interest in the land in the shares stated in paragraph number 1, above, are entitled to a similar share in the value of said improvements and structures.

5. Paragraph 5 reads as follows: "The said land, water right, improvements and structures are hereby classified into the kinds of land and are of the values set opposite each item as follows:

LOT I.

| | | | | | |
|---|---|---|---|---|---|
| Cane | 3.86 at | $300. | Total $ | 1158.00 |
| Road | 0.52 " | 300. | " | 156.00 |
| Ditch | 0.09 " | 300. | " | 27.00 |
| Kiawe | 6.10 " | 300. | " | 1830.00 |
| Grass | 4.96 " | 300. | " | 1488.00 |
| Beach | 6.12 " | 1300. | " | 7956.00 |
| Camp | 2.41 " | 500. | " | 1205.00 |
| Swamp | 0.62 " | 10. | " | 6.20 |
| Paddock | 3.02 " | 300. | " | 909.00 |

TOTAL    27.71                          $14,735.20

Buildings and Fences:

| | |
|---|---|
| Mauka of road: | $1,500. |
| Makai of road | 750. |
| Wire Fences | 277. |
| Rail Fences | 66. |

$2,593.          2,593.00

Removed Buildings ............... 1,020.00

Total Value—with Improvements 18,348.20  $18,348.20

LOT 2

| | | | | | |
|---|---|---|---|---|---|
| Cane- | 5.62 at | $300. | Total $ | 1686.00 |
| Road | 0.63 " | 300. | " | 189.00 |
| R. R. | 0.14 " | 300. | " | 42.00 |
| Ditch | 0.06 " | 300. | " | 18.00 |
| Waste | 0.35 " | 5. | " | 1.75 |

TOTAL    6.80               $ 1,936.75

     Value of rails and ties ............    313.15

TOTAL VALUE ...............................$ 2,249.90   $ 2,249.90

LOT 3

| | | | | | |
|---|---|---|---|---|---|
| Cane | 6.66 at | $400. | Total $ | 2664.00 |
| Road | 0.37 " | 400. | " | 148.00 |
| R.R. | 0.24 " | 400. | " | 96.00 |
| Ditch | 0.12 " | 400. | " | 48.00 |

TOTAL    7.39               $ 2,956.00

     Value of rails and ties ............    385.78

TOTAL VALUE ...............................$ 3,341.78   $ 3,341.78

LOT 4

| | | | | | |
|---|---|---|---|---|---|
| Cane | 3.89 at | $350. | Total $ | 1361.50 |
| Road | 0.30 " | 350. | " | 105.00 |
| Waste | 0.50 " | 10. | " | 5.00 |

TOTAL    4.69               $ 1,471.50

TOTAL VALUE ...............................     $ 1,471.50

LOT 5

| | | | | | |
|---|---|---|---|---|---|
| Cane | 0.75 at | $350. | Total $ | 262.50 |
| Ditch | 0.15 " | 350. | " | 52.50 |
| Pasture | 12.56 " | 50. | " | 628.00 |
| Waste | 14.54 " | 5. | " | 72.70 |
| Taro | 2.50 " | 250. | " | 625.00 |

TOTAL    30.50 Including

            water at source $ 1,640.70

TOTAL VALUE ............................ $ 1,640.70

LOT 6

| | | | | |
|---|---|---|---|---|
| Pasture | 32.59 at | $50. | Total $ | 1629.50 |
| Waste | 10.86 " | 5. | " | 54.30 |
| | | | $ | 1683.80 |

TOTAL VALUE ............................ $ 1,683.80

LOT 7

Tunnel right-of-way

| | | | | |
|---|---|---|---|---|
| | 0.49 at | $ 5. | Total $ | 2.45 |
| Forest | 73.51 " | 5. | " | 367.55 |
| TOTAL | 74.00 | | | 370.00 |

TOTAL VALUE ............................ $ 370.00

GRAND TOTAL $29,105.88

"Those portions of the plantation railroad system upon Lots 2 and 3, described in paragraph No. 1, above, and that portion of the tunnel running through Lot 7, do not enhance the value of these lots, except as already stated."

6. That all growing crops are the sole property of petitioner as owner of its share of the land and as lessee or tenant of the shares of the respondents. This paragraph provides that petitioner shall be permitted to occupy such lands as have growing crops as may be set off to the respondents until such crop is harvested and removed, and shall pay rent therefor for the time of such occupancy at the rents heretofore agreed upon;

7. That Benjamin Kaiuwailani be and he is hereby appointed commissioner to partition and set off to each of the cotenants their respective shares of said land equal in value to the share of each cotenant in the value of the whole property, "including land, water right, improvements and structures, as stated in paragraph No. 5, above." The commissioner was directed to provide for rights of ingress and egress of each cotenant to the land set off to them

respectively and in so far as is possible, without prejudice to the others, to set off to each cotenant such parts thereof as has peculiar value to the cotenant, the doings of the commissioner to be subject to the approval of the court;

8. This paragraph of the decree postponed fixing the rental to be paid by petitioner until the commissioner's report is considered by the court.

Pursuant to the foregoing decree, the commissioner filed his report, together with a map and description of the lands allotted to each of the cotenants and reported that in effecting a division of the property in kind he believes said division is in all respects in conformity with the findings of the court.

The commissioner further reported, however, that in subdividing lot 1, out of which the respondents' allotments are carved, it was necessary to set aside the following reservations:

| | |
|---|---|
| 20-foot road, | 0.716 acre |
| Ditch reserve, | 0. 03 acre |
| Grave reserve, | 0. 01 acre |
| Government road, | 0. 29 acre |

He also reported that he considered setting aside to the several individual owners the whole or portions of lots 2, 3, 4, 5 and 6, "but have deemed it as an ill-advised plan on the ground that said lands are not entitled to any ancient water rights, it having been so decreed heretofore by this Court, excepting 2.5 acres of taro land in Lot 5, which is entitled to ancient water rights." He further reported that he could see no immediate means of getting water to the said land by any of the individual owners herein "and believes that said lands without water can be of no benefit to them."

On the map accompanying the commissioner's report he has delineated lots 1-A to 1-J and the reservations above mentioned into which he subdivided lot 1.

After a hearing on the report of the commissioner, it was decreed that the report and the maps accompanying the same be approved and confirmed and the title to the parcel or parcels "so allotted hereby to each of the owners, with and subject to the rights of way thereto, is hereby vested in the particular party or parties to whom the same is hereby allotted * * * ."

Lots 1-A, area 1.06 acres, 1-F, area 6.64 acres, 1-H, area 2.814 acres, and 1-J, area 2.491 acres of the subdivision of lot 1; all of lot 2, area 6.8 acres, lot 3, area 7.39 acres, lot 4, area 4.69 acres, lot 5, area 30.5 acres, lot 6, area 43.45 acres, lot 7, area 74 acres; lots B, C, and D, being the railroad rights of way in lot 3 and the tunnel right of way in lot 7; the 20-foot road reserve, area 0.716 of an acre, and the ditch reserve, area 0.03 of an acre, were allotted to the petitioner.

The government road reserve, area 0.29 of an acre, was allotted to the Territory of Hawaii.

Lot 1-G, area 5.336 acres, was allotted to Victoria Ward, Limited.

Lots 1-I, area 5.553 acres, and lot 1-E, area 2.278 acres, were allotted to Victoria Kathleen Ward. (Lot 1-E was allotted to her as purchaser of the interest decreed to the executors and trustees of the estate of Caroline J. Robinson, deceased.)

Lot 1-B, area 0.207 acre, was allotted to Abraham K., Solomon K., and Joseph K. Kukea, as tenants in common, in equal shares.

Lot 1-C, area 0.144 acre, was allotted to James, Arthur, Louis, Eliza, Violet, Irene, Rosaline and Arthur Joseph Kaleiwahea as tenants in common in equal shares.

Lot 1-D, area 0.431 acre, was allotted to Thomas Duncan.

The grave reserve mentioned in the commissioner's report is not mentioned in the decree. As shown by the

commissioner's map of the subdivision of lot 1, the grave reserve is situated within lot 1-F allotted to the petitioner, and unless the allotment of lot 1-F carried with it the grave reserve, no allotment of the grave reserve was made.

All buildings, fences, and other improvements are situated on the lands allotted to the petitioner.

The question of paramount importance for our determination on this appeal is whether the circuit judge was right in holding that the lands in question are susceptible of partition in kind without prejudice to the owners.

At common law and in equity partition was always in kind, regardless of the difficulty or inconvenience of doing so, unless the parties agreed to a sale and a division of the proceeds.

The manifest hardship arising from the division of property of an impartible nature has been almost universally avoided by statutory provisions which give to a person entitled to a partition the right to have the premises sold, if they are so situated that partition cannot be made, or that it would be manifestly to the prejudice of the parties if the property were not sold rather than partitioned. Section 4746, Revised Laws of Hawaii 1935 (now section 12456, Revised Laws of Hawaii 1945), authorizes, among other things, a sale of the whole of the property "where for any reason the partition thereof in kind would be impracticable in whole or in part or be greatly prejudicial to the parties interested * * * ." A sale and division of the proceeds among the cotenants is a substitute for partition, in kind. However, partition by sale is an absolute right when the conditions which authorize a sale are found to exist. The generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole. (40

Am. Jur., Partition § 83, p. 72; *Brown* v. *Holmes*, 19 Haw. 268; *Brown* v. *Cornwell*, 20 Haw. 457; *Kluthe* v. *Hammerquist*, 45 S. D. 476, 188 N. W. 749; *Idema* v. *Comstock*, 131 Wis. 16, 110 N. W. 786, 120 Am. St. Rep. 1027.)

In *Idema* v. *Comstock* the land subject to partition consisted of two 40-acre tracts in which the petitioner owned an undivided two-thirds interest and the respondent one third. The petitioner affirmed that a sale was necessary and the respondent affirmed that it was not. The court appointed a referee to investigate and report to it on the feasibility of partition in kind. The referee reported to the court that the premises were so situated and of such character that a partition thereof could not be made without great prejudice to the owners, and the court ordered a sale. The respondents appealed. The evidence upon which the order to sell was based is not fully detailed in the opinion but in affirming the order to sell the court summarized the evidence as follows: "Several witnesses were examined and cross-examined. All of them were called by the respondent. The general effect of their evidence is that the two forties of land are located at a considerable distance from any settlement; are chiefly valuable for the timber thereon; that a partition between the parties would result in one becoming the owner of one and a fraction of a 40-acre tract, the other the possessor of a small fraction of such a tract; that such fraction would not be, under the circumstances characterizing the land in question, ordinarily salable at the full value which it would represent as a part of a considerable body of land; that large bodies of land are more salable than small ones; and that a mere small fraction of a government subdivision, except in special circumstances, is not salable at all." 110 N. W. 786, 787, *supra.*

The fact that the property is not, by reason of its physical aspects, of an impartible nature does not conclusively

establish a case for partition in kind. Other circumstances may make it impossible to partition it in kind without great prejudice to some or all of the parties. In this case the fact that the undivided interest of the petitioner is approximately 7/8ths of the whole and the remaining 1/8th is owned by some fourteen other persons in varying proportions is a circumstance to be considered in determining whether the interest of the minority owners will be greatly prejudiced by a partition in kind.

"If the nature of the property is such that on a division thereof the purparts could neither be used nor sold a sale for division is obviously necessary. And it has been held that a sale is generally necessary 'where the property is not of uniform character and value.'" 47 C. J., Partition § 442, p. 446, citing *Carpenter* v. *Coats*, 183 Mo. 52, 81 S. W. 1089, the syllabus of which follows: "Where, in an action for partition, the answer prayed that the land be divided in kind, if possible, and, if not, that it be sold and the proceeds divided, and there was evidence that the land was not of a uniform value or character, a decree ordering a sale was proper." See *Brown* v. *Holmes, supra.*

The land in question is situated several miles from the nearest town or village. It consists of six noncontiguous parcels widely scattered up a valley extending from the seashore into the mountains. It is situated in the midst of petitioner's sugar plantation of more than 10,000 acres and has been in possession of petitioner for almost fifty years and used by it as a part of its plantation, at first as a lessee and later as a holdover tenant and part owner. The parcels vary widely in area, character and value. The petitioner owns most if not all of the lands which surround the various parcels of this land. It requires no evidence to demonstrate that the very small parcels which would be necessarily allotted to the respondents, especially to the three Kukeas and to the eight Kaleiwaheas, would be too small to be used or advantageously sold by them.

In our opinion on the former appeal we pointed out that evidence of value is of the greatest importance in determining whether property is susceptible. of partition in kind and should be no less detailed, complete and comprehensive than the scope of the inquiry involved, and that this is especially so where, as here, the land consists of more than one parcel differing in class, type and location. While much time was consumed in presenting evidence of the value of the various classes of the land, practically none of the evidence was specifically directed to the question of whether the value of the parcels into which it would be necessary to divide the land would be materially less than the share of the money equivalent that could probably be obtained for the whole. Nevertheless, some very significant evidence was produced tending to show that such would be the result, and the report of the commissioner who effected the partition has the same tendency as to the partition actually made.

Mr. C. A. Brown, who since 1923 has been employed by petitioner as its civil engineer, testified that a sale of the land as a whole would be prejudicial to the petitioner because it would be sold at public auction and the "price would run up for the minority holders' interest."

The commissioner reported that he could see no immediate means of getting water to the lands by any of the individual owners and that he believed that said lands without water can be of no benefit to them.

The evidence discloses that in the event of a sale of the land as a whole, both the petitioner and the respondent Victoria Kathleen Ward intend to enter the bidding and that they are both of sufficient financial ability to enable them to purchase the whole of the land. Miss Ward has expressed a sentimental interest in the ownership of the land here involved as well as an exalted opinion of the value of the property as a whole.

"In determining the mode of partition, in addition to a consideration of the nature and situation of the land, the situation and pecuniary interests of the parties may be considered. In determining whether the property should be sold the question of the financial ability of one of the parties to purchase should be considered. * * *

"Sentimental reasons, especially in the preservation of the home, are also entitled to consideration, although necessarily they must be subordinated to the pecuniary interests of the parties." 47 C. J., Partition § 450, p. 449.

The controversy over the existence or nonexistence of water rights is another circumstance to be considered in determining the mode of partition. The decree appealed from is to the effect that 2.5 acres of lot 5 is the only portion of said land entitled to water. An inspection of the record makes it apparent that the only water right considered by the court was the right to water for artificial use. Such a right is quite different from and inferior to a right to water for domestic use.

The land commission award to John Previer was issued in 1849 and in it lot 1 is referred to as a "house lot" called Wainalu and recites that "The claimant has submitted to the Board a deed of this land from his Majesty Kamehameha III and Governor Adams, executed on the 6th day of January in the year of our Lord 1840, conveying this house lot in connection with a land called Waihale with all the rights, privileges and appurtenances thereunto belonging to the claimant John Previer and his Hawaiian born heirs to have and to hold forever, but upon the condition, that they shall never dispose of the same to any alien."

It may be conceded for the purposes of this discussion that the evidence was insufficient to establish that any of said land other than the 2.5 acres in lot 5 was entitled to water for artificial use, but it does not necessarily follow that the house lot which the awardee had owned and oc-

cupied for nine years prior to the award was not entitled to water from Honokowai stream for domestic use, at the time of the award.

In *Carter* v. *Territory*, 24 Haw. 47, at 66, Chief Justice Robertson after stating that the right to water for artificial use is, in its nature, inferior to the primary right for domestic use, said: "It is well established at common law that the ordinary and natural use of water for household purposes, i. e., for drinking, washing, cooking, and for watering domestic animals, is a superior right to the use of water artificially, i. e., for mining, agricultural and commercial purposes. Gould on Waters (3d ed.) Sec. 205; 2 Farnham on Waters, Sec. 467. And we have no doubt that such is the law of this Territory."

In *Territory* v. *Gay*, 31 Haw. 376, at 395, the late Chief Justice Perry made the following more elaborate statement of the Hawaiian law on the subject under discussion: "Water for domestic purposes on a lower ahupuaa is in any event assured under Hawaiian law. Every portion of land, large or small, ahupuaa, ili or kuleana, upon which people dwelt was, under the ancient Hawaiian system whose retention should, in my opinion, continue unqualifiedly, entitled to drinking water for its human occupants and for their animals and was entitled to water for other domestic purposes. At no time in Hawaii's judicial history has this been denied. Whenever it is proven that people dwelt, at the time of the award of the land commission, upon a piece of land awarded, it will be easily found and adjudicated that that piece of land was and is entitled to water for all domestic purposes. Under similar circumstances lands of the king or of any other konohiki which have remained unawarded would be similarly treated. These rights to water for drinking purposes and for other domestic uses are included in the ancient appurtenant rights hereinabove referred to. As already stated, the surplus water, whether

normal or freshet, which is the subject of controversy and adjudication in the case at bar does not include, but by exclusion provides for, ancient appurtenant rights, which latter include rights to water for domestic purposes."

It is conceded that no water except freshet water now comes down Honokowai stream to lots 1 and 2 but the court correctly held that this condition was due to the diversion of its water by petitioner by means of its dam and tunnel above the Previer land. The evidence established that the normal flow of Honokowai stream at the tunnel intake is about four million gallons per day, all of which is diverted by the dam and tunnel; that the tunnel capacity is about forty million gallons per day and that in times of freshet the tunnel diverts water to its full capacity.

We think, however, that the question of the existence or nonexistence of such a water right as is claimed for this land involves issues that cannot be conclusively determined in this proceeding. In order to make a binding adjudication of such a water right as the one here claimed, the owners of all other lands that abut upon Honokowai stream would be necessary parties. The issue of water rights was very informally presented by the pleadings. The only reference to such rights to be found in the pleadings is the prayer of the respondents in their answer, "that the water rights belonging to each particular parcel or lot of land * * * be decreed and determined by the court."

The decision of the circuit judge recites that, "The Honokowai stream bed—now normally dry due to the diversion of its water at or near the source, as will be later seen —runs from the mountains to the sea in a deep gorge along the left hand side of the canefields as they are faced from the sea. Lots 1, 2 and 5 border on this stream bed; indeed Lot 5 runs to the middle of the stream. In the case of Lots 1 and 2 the bed of the stream is several feet below the lots."

The evidence further discloses that there are approximately 120 kuleanas that abut upon Honokowai stream below petitioner's diversion dam. Some of these kuleanas are owned by persons not party to this suit. These owners would not be bound by a decree purporting to settle the right of these lands to the water of Honokowai stream.

The decree purporting to settle the water rights is accordingly reversed, to the end that the issue be left open for adjudication in a proper proceeding, if such a proceeding should be instituted.

The decision as to the effect of the decree of the land court hereinbefore set forth was followed in the decree by vesting the fee-simple title to the lands occupied by the tunnel and railroads in the petitioner.

The land court decree, omitting descriptions of the lands and easements, follows:

"After consideration, the court doth adjudge and decree that said Lahaina Agricultural Company, Limited, an Hawaiian corporation of Honolulu, T. H., is the owner in fee simple of an undivided six hundred thirty-four—eight hundred ninety-sixths (634/896ths) share or interest in that certain parcel of land situate in the Ili of Waihale, Honokowai, Kaanapali, County of Maui, Territory of Hawaii, being land described in Royal Patent 7691, Land Commission Award 327-B to John Previer, and more particularly described by metes and bounds as follows: (Here follows metes and bounds descriptions of the seven lots of land in which the applicant claimed an undivided interest.)

"And the court doth adjudge and decree that said land be brought under the operation and provisions of Chapter 178 of the Revised Laws of Hawaii 1915, as amended, and that the title of said Lahaina Agricultural Company, Limited, to said land be confirmed and registered, subject, however, to any of the encumbrances mentioned in Section 3171 of said Revised Laws of Hawaii which may be sub-

sisting and subject also to: (Here follows center line descriptions of:

1. A 30-foot public road right of way across lot 1;

2. A 20-foot right of way for railway of the Pioneer Mill Co., Ltd., across lot 3;

3. A 20-foot right of way for another railway of the Pioneer Mill Co., Ltd., across lot 3;

4. A 20-foot right of way for the tunnel of Pioneer Mill Co., Ltd., across lot 7.)"

A critical reading of the decree discloses that it purports to deal with and effect only the undivided interest of the applicant in the land therein described. No adjudication was made which purports to settle any conflicting claims between the respondent, Pioneer Mill Company, Limited, and the other respondents in the land court proceeding.

Section 3170, Revised Laws of Hawaii 1915 (now R. L. H. 1945, § 12637) the statute in effect at the time the land court decree was issued, provides *inter alia* that, "The court may remove clouds on titles and may find and decree in whom the title or any interest, legal or equitable, in land is vested, whether in the applicant or in any other person." Assuming that the foregoing statute would have authorized the court to find and decree the existence or nonexistence of the easements for rights of way over the undivided interest of the respondents, if its jurisdiction to so decree had been invoked by either the Pioneer Mill Company, Limited, or the other respondents, we find from an inspection of the record that Pioneer Mill Company, Limited, did not answer or otherwise plead in the land court, and the answers of the other respondents made no mention of such an issue. Certain it is that the land court did not have jurisdiction to register, and did not purport to register, the title of Pioneer Mill Company, Limited, in and to said asserted easements for right of way. (*In re Rosenbledt*, 24 Haw. 298, *supra.*)

Regardless of whether, in view of our disposition of title to improvements on the former appeal, the circuit judge erred in allowing the petitioner to reopen the question of title to the improvements claimed by it, we find that said decree has no effect upon that issue. Hence, the petitioner's claim of title to improvements was settled by our opinion on the former appeal.

The petitioner removed houses belonging to the co-tenants from the land here involved to lands owned by it in severalty. It admitted and the court found that the value of these houses was $1020. This sum is a part of the property to be partitioned.

We conclude that the decree as to water rights and title to the railroad and tunnel rights of way, and ordering partition in kind, should be reversed and a decree entered by this court ordering a sale of the property and a division of the proceeds among the cotenants according to their respective interests in the property.

Accordingly, we call upon counsel to prepare and present to us for entry a decree in accordance with this opinion.

*E. Vincent* and *Miss M. K. Ashford* for appellant Victoria Kathleen Ward.

*Cass & Silver* for appellant Victoria Ward, Limited.

*Smith, Wild, Beebe & Cades* for petitioner-appellee, Pioneer Mill Company, Limited.

### CONCURRING OPINION OF LE BARON, J.

The issue pertaining to the title of the structures and improvements such as the water tunnel and railroads on the lands subject to partition was authoritatively settled on first appeal of this cause, this court holding that "* * * the structures and improvements placed upon the land are not the sole property of the petitioner but, on the contrary,

are the property of the parties hereto as tenants in common to the extent of their respective interests * * * ." (*Pioneer Mill Co.* v. *Ward,* 34 Haw. 686, 707.) This prior appellate determination, not having been disturbed by higher tribunal, became the law of the case (see *Dress Mfg. Co.* v. *Cadinha,* 36 Haw. 732) on the express remand of the cause for further hearing upon the issue of whether the lands are susceptible to partition in kind, the respective interests of the parties therein not being in dispute. (See *Pioneer Mill Co.* v. *Ward, supra.*) Consequently, no manifest error therein appearing in the record, that determination need not be reexamined on subsequent appeal.

The efficacy therefore of this, the second appeal, to cause appellate reversal of the decree entered by the trial judge after remand at the further hearing primarily depends upon whether his determination of the remaining issue which was the subject of that hearing constitutes reversible error. On that issue he ruled that the lands are susceptible to partition in kind and decreed accordingly. This the appellants specify and assign as error. Such presents the paramount question, an affirmative answer thereto being decisive of the appeal.

In this territory partition is a matter of equitable cognizance (see *Brown* v. *Holmes,* 19 Haw. 268; R. L. H. 1945, § 12450. Also see *Haw. C. & S. Co.* v. *Waikapu S. Co.,* 9 Haw. 417), the courts by statute being empowered *inter alia* either to divide the lands (or portions thereof) among the parties according to their respective proportionate interests therein where equitable or to sell the lands as a whole "* * * where for any reason the partition thereof in kind would be impracticable in whole or in part or be greatly prejudicial to the parties interested * * *." (See R. L. H. 1945, § 12456.) By virtue of this statutory authorization it follows as a matter of law that, where it appears inequitable so to divide (meaning that partition

in kind would be impracticable in whole or in part or be greatly prejudicial to the parties interested), the lands are not susceptible thereto and a ruling to the contrary by the trial judge would be an abuse of judicial discretion.

The difficulty of judicially determining whether the lands are partible in this case is that there is involved a question of water rights which materially affects the ultimate value of the lands subject to partition as a whole and that of the interest of each coparcener therein. This question is raised by the pleadings where it is claimed that certain of the lands subject to partition which border a stream have been deprived of anciently entitled water rights. The undisputed evidence upon this question is that those lands are not the only ones bordering the stream but that lands not subject to partition also abut it and that the water tunnel since its construction has diverted and continues to divert water from that stream to other lands not subject to partition. It is apparent therefrom that the question cannot be finally adjudged in this litigation because it concerns lands beyond the jurisdictional limits of the case, nor can there be binding settlement of water rights, parties necessary thereto not having been joined and juridical adjustment or allowance of owelty to the lands subject to partition for loss in value that may be caused by any deprivation of rights in the diversion of water to other lands being jurisdictionally impossible. It therefore cannot be said as a matter of law in this suit that the lands sought to be partitioned are partible nor that partition in kind thereof would not be impracticable, either in whole or in part, or greatly prejudicial to the parties in respect to their proportionate interests, the jurisdictional inability to settle the question of water rights rendering the lands incapable of equitable division and the trial judge's decretal determination erroneous and prejudicial.

Although nothing more need be said, it is material to

the issue of partibility that the lands themselves are not otherwise susceptible to partition in kind by reason of their impartible nature. The record reveals that the lands are rural and remote from any urban district. It further shows that they are comprised of six noncontiguous parcels scattered from the mountains to the sea, having an aggregate area of less than 200 acres, and that within and between the various parcels there exists no uniformity but great diversity of locations, characters and present values.

The sheer impracticability (aside from that attendant upon the question of water rights) of dividing such parcels is evident, even were the component parts of the division comparatively few in number and of comparable sizes. (Compare *Brown* v. *Holmes, supra.* See *Lee Chu* v. *Noar*, 14 Haw. 648.) Such impracticability, moreover, is accentuated in this case by the multifarious interests of the parties hereto, especially in respect to those interests which are so infinitesimal that allotments in regard to them would be practically worthless and unusable in great prejudice to the parties receiving them. In this connection the record discloses that the parties hereto are sixteen in number, eight of which have 0.007875 per-cent interest each, three 0.0296-2/3 per-cent each, one 0.195 per-cent, one 2.345 per-cent, one of the appellants 5.470 per-cent, the other 6.250 per-cent and the appellee 85.588 per-cent.

By the same token it is likewise evident that partition in kind would greatly prejudice all the coparceners. This is borne out not only by the impossibility to properly compensate for any loss in value to the whole that may be caused by deprivation of rights in the diversion of water to other lands but also in general by the only evidence in the record of comparative values in regard to the lands subject to partition, which tends to show that their total value after partition in kind would be substantially less than the probable monetary realization upon a sale of the

whole. Such disparity of values is a well-settled criterion of prejudice. (See 40 Am. Jur., § 83, p. 72 and n. 4 for authorities.) In support of this probative tendency a strong likelihood is indicated by the record that the difference between the two methods of partition would be even more substantial and the amount realized by partition sale greater than otherwise would be obtained. This would be occasioned by entry into the bidding not only of the appellants who have the financial ability to purchase but also of the appellee and other owners of those lands which may be benefiting from the diversion of water and the resultant stimulation thereto which such participation would have, it being to the special advantage of the appellee and such owners to purchase the lands placed on sale so as to consolidate their holdings and thereby eliminate any question of right to the water diverted thereafter. At this point it should be noted that the probable effect by partition in kind upon the respective interests of the parties in the lands to be partitioned is material to the question of prejudice but not the effect it may have upon other interests in those not the subject of partition unless it clearly would tend to promote the common interest of all the coparceners. From the evidence in this case, however, such equality would not arise, the appellee being the only party hereto having an interest in adjoining lands and any effect advancing that interest having the tendency to promote the appellee's interest in its allotment exclusively.

In short, it conclusively appears from the evidence that a sale would be the only feasible means by which all the parties could be equitably treated as tenants in common according to their respective proportionate interests. Under this state of the record, the appellants have an absolute right as a matter of law to a partition by sale which the trial judge should have upheld. He therefore abused his judicial discretion by determining in denial of that right

that the lands are susceptible to partition in kind. This clearly constitutes reversible error.

It is not necessary to consider the particular plan of partition adopted by the decree as a consequence of that error nor the procedure employed in arriving at it. Suffice it to say that the decree of partition neither settled the question of water rights nor equitably divided the lands and that the partition in kind ordered by it affords in itself ample illustration of the impracticability of such method as well as that of the great prejudice to the parties engendered thereby, thus exemplifying the prejudicial nature of the error committed by the trial judge in his determination of the main issue that was before him.

For the reasons stated herein, I concur with the result of the majority opinion that the decree should be reversed and final decree entered by this court ordering a sale of the lands as a whole with division of the proceeds among the parties in proportion to their respective interests as cotenants, together with an apportionment of the value of the houses removed by the appellant as pointed out by that opinion.