*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCAP-23-0000297
19-FEB-2025
11:17 AM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

GORDON M. ROBINSON; GORDON M. ROBINSON, AS CUSTODIAN UNDER THE
HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR KELLY K. ROBINSON;
GORDON M. ROBINSON AS CUSTODIAN UNDER THE HAWAI'I UNIFORM
TRANSFER TO MINORS ACT FOR KEOLA M. ROBINSON; JAMES CHARLES
ROBINSON AND LORRAINE OMPOY ROBINSON, TRUSTEES OF THE JAMES
CHARLES ROBINSON AND LORRAINE OMPOY ROBINSON TRUST DATED
DECEMBER 20, 2007; JAMES C. ROBINSON, AS CUSTODIAN UNDER THE
HAWAI'I UNIFORM TRANSFERS TO MINORS ACT FOR RACHEL E. ROBINSON;
JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM
TRANSFER TO MINORS ACT FOR KEALA C. ROBINSON, ALSO KNOWN AS
KEALA CALAPINI, ALSO KNOWN AS KEALA ROBINSON; KEALA C. ROBINSON
ALSO KNOWN AS KEALA CALAPINI, ALSO KNOWN AS KEALA ROBINSON;
JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM
TRANSFER TO MINORS ACT FOR KAWIKA J. ROBINSON; and JAMES C.
ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO
MINORS ACT FOR JEREMY C. ROBINSON, RACHEL E. ROBINSON, KAWIKA J.
ROBINSON, JEREMY C. ROBINSON, KELLY K. ROBINSON, and KEOLA M.
ROBINSON,
Plaintiffs-Appellees,

vs.

CATHLEN C. ZARKO; CHRISTOPHER P. ZARKO; DONELLE N. ZARKO;
LISA K. ZARKO; and PATRICK C. ZARKO,
Defendants-Appellants,

and

KYLE I. FORSYTHE; SHAWN K. FORSYTHE; SHANIN A. SADO; LAUREN E. FORSYTHE; GILES M. FORSYTHE; TANYA MARIE LOELANI ROBINSON AND WILLIAM ALBERT ROBINSON, CO-TRUSTEES UNDER THE TANYA AND WILLIAM ROBINSON TRUST DATED NOVEMBER 27, 2006; AULANI M. DUSENBERRY; MALIA Y. BARROGA; GILES A.I. FORSYTHE AND ARNETTE FORSYTHE, TRUSTEES UNDER THE GILES A.I. FORSYTHE REVOCABLE LIVING TRUST DATED AUGUST 3, 2006; GILES A.I. FORSYTHE AND ARNETTE R. FORSYTHE, TRUSTEES OF THE ARNETTE R. FORSYTHE REVOCABLE TRUST DATED AUGUST 3, 2006,
Defendants-Appellees.

------------------------------------------------------------------

ARNETTE R. FORSYTHE AND GILES A.I. FORSYTHE AS TRUSTEES OF THE ARNETTE R. FORSYTHE REVOCABLE TRUST DATED AUGUST 3, 2006; ARNETTE R. FORSYTHE AND GILES A.I. FORSYTHE AS TRUSTEES OF THE GILES A.I. FORSYTHE REVOCABLE TRUST DATED AUGUST 3, 2006; SHAWN K. FORSYTHE; LAUREN E. FORSYTHE; GILES M. FORSYTHE; KYLE I. FORSYTHE; and SHANIN A. SADO,
Counter-Claimants-Appellees,

vs.

GORDON M. ROBINSON; GORDON M. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR KELLY K. ROBINSON; GORDON M. ROBINSON AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR KEOLA M. ROBINSON; JAMES CHARLES ROBINSON AND LORRAINE OMPOY ROBINSON, TRUSTEES OF THE JAMES CHARLES ROBINSON AND LORRAINE OMPOY ROBINSON TRUST DATED DECEMBER 20, 2007; JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFERS TO MINORS ACT FOR RACHEL E. ROBINSON; JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR KEALA C. ROBINSON, ALSO KNOWN AS KEALA CALAPINI, ALSO KNOWN AS KEALA ROBINSON; KEALA C. ROBINSON, ALSO KNOWN AS KEALA CALAPINI, ALSO KNOWN AS KEALA ROBINSON; JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR KAWIKA J. ROBINSON; and JAMES C. ROBINSON, AS CUSTODIAN UNDER THE HAWAI'I UNIFORM TRANSFER TO MINORS ACT FOR JEREMY C. ROBINSON, RACHEL E. ROBINSON, KAWIKA J. ROBINSON, KELLY K. ROBINSON, and KEOLA M. ROBINSON,
Counter-Defendants-Appellees.

------------------------------------------------------------------

2

ARNETTE R. FORSYTHE AND GILES A.I. FORSYTHE AS TRUSTEES OF THE
ARNETTE R. FORSYTHE REVOCABLE TRUST DATED AUGUST 3, 2006;
ARNETTE R. FORSYTHE AND GILES A.I. FORSYTHE AS TRUSTEES OF THE
GILES A.I. FORSYTHE REVOCABLE TRUST DATED AUGUST 3, 2006;
SHAWN K. FORSYTHE; LAUREN E. FORSYTHE; GILES M. FORSYTHE;
KYLE I. FORSYTHE; and SHANIN A. SADO,
Cross-Claimants-Appellees,

vs.

CATHLEN C. ZARKO; CHRISTOPHER P. ZARKO; DONELLE N. ZARKO;
LISA K. ZARKO; and PATRICK C. ZARKO,
Cross-Defendants-Appellees,

and

TANYA MARIE LOELANI ROBINSON AND WILLIAM ALBERT ROBINSON,
CO-TRUSTEES UNDER THE TANYA AND WILLIAM ROBINSON TRUST DATED
NOVEMBER 27, 2006; AULANI M. DUSENBERRY; and MALIA Y. BARROGA,
Cross-Defendants-Appellees.

---

SCAP-23-0000297

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CAAP-23-0000297; CASE NO. 2CC101000537)

FEBRUARY 19, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA AND DEVENS, JJ.

OPINION OF THE COURT BY DEVENS, J.

This appeal comes to this court as a transfer case from the Intermediate Court of Appeals (ICA). Defendants-Appellants Cathlen Zarko, et al. (Zarko Defendants) appeal from the April 18, 2023 Final Judgment and related orders of the Circuit Court of the Second Circuit (circuit court) partitioning a family-owned oceanside home lot in West Maui. The other parties

3

to the underlying partition action are Plaintiffs-Appellees Gordon Robinson, et al. and James Robinson, et al. (collectively, Plaintiffs), Defendants-Appellees William Robinson, et al. (hereinafter, Robinson Defendants), and Defendants-Appellees Shanin Sado, Kyle Forsythe, and Arnette Forsythe, et al. (collectively, Forsythe Defendants).

The circuit court's Final Judgment ordered the subject parcel, a lot in Mailepai, Lāhainā, Maui (the Property) and its four existing free-standing residential structures, be partitioned as a four-unit Condominium Property Regime (CPR). On appeal, the Zarko Defendants raise a novel question of law: can a circuit court exercising its equitable powers in a Hawai'i Revised Statutes (HRS) Chapter 668 partition action order a partition by condominiumization under HRS Chapter 514B, the Condominium Property Act? For the reasons discussed herein, we hold that partition by CPR is not a lawful form of partition in kind pursuant to HRS Chapter 668. Accordingly, we vacate the circuit court's April 18, 2023 Final Judgment and related orders and remand this case to the circuit court to undo the CPR that was created on the Property, partition the Property by sale, and hold further proceedings consistent with this opinion.

4

## I.  Background

### A.  Factual Background

The Property at issue is located in Lāhainā, Maui.  The Property is a portion of the lands described and conveyed by Royal Patent Number 1663, Land Commission Award Number 5524 to L. Konia, being all of Allotment 14a of "Hui Aina o Mailepai" in the ahupua'a of Mailepai.  The Property is a 2.35 acre parcel encompassing an entire point of land with nearly 1,200 feet of ocean frontage.

The Property was conveyed to Elizabeth Cockett Robinson (Elizabeth) and eventually placed into her trust.  During her life, Elizabeth conveyed undivided percentage interests in the Property to her children and grandchildren.  After her passing, the remaining undivided percentage interest in Elizabeth's trust went to her five children: Gordon, James, Arnette, Cathlen, and William.

The parties to this suit are the 'ohana groups of the five siblings who have held the following respective ownership interests in the Property: Forsythe Defendants--24.8% undivided interest; Zarko Defendants--21.8% undivided interest; James Robinson Plaintiffs--21.8% undivided interest; Gordon Robinson Plaintiffs--15.8% undivided interest; and William Robinson Defendants--15.8% undivided interest.  There are four separate

dwelling structures on the Property, three of which were built by Gordon, James, and William Robinson, whose families live on the Property, while the families of Arnette Forsythe and Cathlen Zarko do not reside there.  One of the dwellings is uninhabitable.

For decades, the families repeatedly tried to divide the Property into severalty between the five siblings' 'ohana groups, but without success.  In 2003, Gordon Robinson proposed a three-lot subdivision, which was not pursued by the co-owners, and in 2004, the Successor Trustee for the Elizabeth Cockett Robinson Trust, Giles Forsythe, proposed the Property be subdivided into four lots.  The co-owners apparently signed a four-lot subdivision agreement; however, the Property was never subdivided.  The parties also attempted to sell the Property in its entirety from 2005 through 2008.  Offers were received, but the parties never sold.

B.  **Circuit Court Proceedings**

After the failed attempts to subdivide and sell, a partition action was initiated in the Circuit Court of the Second Circuit over fourteen years ago on August 26, 2010.[1]  The Plaintiffs' suit sought a partition in kind of the Property into

---

[1]    The Honorable Rhonda I.L. Loo presiding.

6

five parcels or, in the alternative, partition by sale.[2]  The

Forsythe, Robinson, and Zarko Defendants filed answers and

counterclaims seeking partition by sale.

In 2012, the parties agreed to list the Property for sale

in February and again in October.  The Property was not sold.

On August 1, 2012, the Plaintiffs filed a Second Amended

Complaint, which amended their request from a five-parcel

subdivision to a three-parcel subdivision of the Property, or,

in the alternative, partition by sale.[3]  Plaintiffs later filed a

Third Amended Complaint clarifying party names.  The Forsythe,

Zarko, and Robinson Defendants filed answers, and the Forsythe

and Robinson Defendants filed counter- and cross-claims asking

that the Property be sold.[4]

Over a year later, the circuit court appointed a partition

commissioner to prepare a report determining if and how the

Property could be divided in kind for allotment to the parties,

---

[2]     Plaintiffs filed a First Amended Complaint which corrected the names of the defendants in the action.

[3]     Plaintiffs added a third claim, seeking damages for the loss of a homeowner's tax exemption allegedly due to the Zarko Defendants' failure to pay their proportionate share of the property taxes.  Issues related to the amounts of property taxes paid or owed are not before this court, as the circuit court's proceedings have not reached matters relating to the equitable division of the Property and adjudication of claimed credits and offsets.

[4]     The Robinson Defendants' counterclaim also sought, as an alternative to partition by sale, a partition in kind of the Property into three lots.

or if the Property required a sale.  On January 24, 2014, the commissioner submitted his report concluding that the Property should be sold on the market because partition of the Property in kind would greatly prejudice the owners.  This recommendation was based on the commissioner's assessment of six appraisals of the Property's value, three for the Property as a whole, and three with a three-parcel subdivision, factoring in the many costs and financial burdens and regulatory compliance issues with the County of Maui (County) codes.

The commissioner also addressed the possibility of a partition by CPR.  He concluded that the value of the Property would likely diminish because of the nature of a CPR's common ownership and the possibility that the Property's structures were not "in code compliance," problematizing further development or improvement of individual units.  Thus a CPR would reduce the value of the Property for the owners, especially for the two, non-resident 'ohana groups.  The commissioner concluded that after considering the diminution in value that would result with any division of the Property, and the equities--including the connections the five 'ohana groups had with the land and the costs of subdividing--partition in kind would likely greatly prejudice the owners; therefore, his recommendation was partition of the Property by sale.

Plaintiffs objected to the commissioner's report and again asked the court to order partition in kind by dividing the Property into three separate lots or to investigate a three-unit CPR. The Forsythe Defendants maintained their position seeking partition by sale and asked the court to confirm and adopt the commissioner's report.

On July 14, 2014, the circuit court rejected the commissioner's recommendation to partition the Property by sale and ordered a partition in kind by three-lot subdivision with costs to be advanced by the Plaintiffs. In its findings of fact, the court rejected the commissioner's overall assessment that a partition in kind would result in a diminution in value of the Property as a whole. And in its conclusions of law, the court noted that Hawai'i partition law expressed a preference for partition in kind as well as a preference to allot to a co-tenant the portion of the Property that was occupied and improved by that tenant.

A year after the court issued its three-lot subdivision order, Plaintiffs returned to court and asked that the commissioner be allowed to list the Property for private sale, which the court granted without opposition. However, the Property did not sell.

9

Almost three years after issuance of the three-lot partition order, noting the unlikelihood that the County would grant needed code variances, the commissioner filed a motion asking the court to instruct on a two-lot subdivision instead. With no opposition from the parties, the court granted the commissioner's motion to proceed, amending the July 14, 2014 order to create a two-lot subdivision.

Nearly four years after the two-lot subdivision order was entered, on January 2, 2021, the Robinson Defendants joined the Plaintiffs in filing a motion to amend the July 14, 2014 partition order from a subdivision of the Property to the creation of a four-unit CPR. These parties further requested that Gordon, James, and William Robinson's 'ohana groups each be awarded one of the new condominium units, which were residential structures these 'ohana had lived in for decades, and that the fourth unit be assigned collectively to the Zarko and Forsythe Defendants. The Zarko and Forsythe Defendants opposed this request, with the Zarkos arguing that HRS Chapter 668 did not allow partitions by CPR.

The commissioner filed a statement relating to the Plaintiffs and Robinson Defendants' motion, asking the court for specific guidance on the request for partition by CPR. While agreeing that a CPR would be "simpler" and "alleviate many of

the costs and challenges" impeding subdivision, the commissioner noted "significant challenges" that he asked the court to give detailed instructions on. These challenges included his concerns that structures on the Property may not be able to pass County inspections necessary to condominiumize "without significant expenses and upgrades," and since the CPR would not be a subdivision, careful delineation of rights that applied to the property as a whole versus rights enjoyed by separate units needed to be determined. He noted that the "ultimate solution must be in the best interest of all parties."

The circuit court held a hearing on the motion to partition by four-unit CPR. The Zarko Defendants again argued that HRS Chapter 668 did not empower the court to partition by CPR. And the Forsythe Defendants asserted:

> The problem here is that [HRS Chapter 668] refers to equitable distribution. And the key word here is distribution. When you do a condominium, you are continuing to be hinged at the hips with everybody else in the project. It's not a situation where you walk away with your own separate piece of property which you can do with as you see fit. You are subject to the association, the rules of the association and the condominium.
> And, therefore, this is not the same animal as a subdivision. And, therefore, we don't believe that condominiums are allowed in situations where a partition action has been brought forth.

On May 25, 2021, the circuit court granted Plaintiffs and the Robinson Defendants' motion. The court ordered partition by CPR without analyzing the potential prejudice to any of the owners created by the imposition of a CPR. The extent of the

court's discussion of the equities in the hearing only touched on the "feasibility of the request" and "the equitable interest of the parties: namely, that they are parties in this case who wish to remain living on the property and oppose any sale of their interest[.]"

After completing the four-unit CPR, on October 12, 2022, the commissioner filed a motion requesting, inter alia, that the court determine which 'ohana group would take title to each CPR unit. The attached CPR Declaration indicated that the commissioner had apportioned to each of the four units an undivided 25% interest in all common profits and expenses and common elements of the CPR.

Plaintiffs responded to the commissioner's motion for property disposition by asking that the court find, pursuant to HRS § 668-7(5), that the James Robinson Plaintiffs were equitably entitled to Unit A because they built that structure and installed the Property's only water meter near that unit at their expense. And they asked that the court assign Unit B to Gordon's children, Kelly and Keola Robinson, for equitable reasons, since their father built that family home, and Kelly continued to reside there. Plaintiffs had previously requested that the Robinson Defendants receive Unit D, with the

uninhabitable Unit C to be distributed to the Zarko Defendants and Forsythe Defendants collectively.

The Zarko Defendants opposed the commissioner's motion, challenging both the legality of the partition by CPR and the proposed assignment of the CPR units as being inequitable. They further asserted, inter alia, that the court's partition order did not vest the commissioner with the power to act as a CPR developer. They argued that it was likely that two or more CPR units would need to be sold to compensate the Zarko and Forsythe Defendants' almost 50% undivided interest in the Property. The Zarko Defendants also submitted documentation allegedly showing that Unit C was unsafe and unlivable. These records indicated that County building inspectors had only designated the structures on the Property as safety code-compliant once the electricity was shut off to Unit C.

The circuit court granted the commissioner's motion for property disposition, confirming the commissioner's intent to determine if the parties agreed to assign the CPR units to different 'ohana groups, or, if they could not agree, the commissioner would assign the parties their current co-tenancy percentage interest in the disputed units.[5] Once again,

---

[5] Following the retirement of Judge Loo, the Honorable Kirstin M. Hamman presided over the proceedings after January 2022.

13

Plaintiffs and the Robinson Defendants asked that the court order Unit C be assigned to the Zarko and Forsythe Defendants, while the Forsythe Defendants asked the court to assign all co-tenants their undivided percentage interests in the entirety, pending a new appraisal of the CPR units. The Forsythe Defendants also objected to any future assignment of Unit C to themselves and the Zarko Defendants as being inequitable given their actual ownership percentages.

On April 18, 2023, the court entered Final Judgment on the commissioner's October 12, 2022 motion for order of property disposition, directing that the judgment was "immediately appealable" under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b).[6] Two months later, the circuit court ordered the conveyance of ownership interests in the CPR such that "each

---

[6]     HRCP Rule 54(b) (eff. 2000) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

HRCP Rule 54(b).

14

Unit shall be owned by all of the parties as tenants in common[,]" preserving the original percentage interests for each of the parties' 'ohana groups. The court further ordered the appraisal of the condominiumized Property but then immediately stayed its order pending appeal.

## C.   ICA Proceedings

The Zarko Defendants timely appealed the circuit court's April 18, 2023 Final Judgment; the January 17, 2023 order, granting the commissioner's October 12, 2022 motion, inter alia, for an order of property disposition; and the May 25, 2021 order granting Plaintiffs' motion to amend the court's July 14, 2014 partition order to a four-unit CPR.

The Zarko Defendants assert three points of error: (1) that the circuit court erred when it ordered the creation of a CPR as a partition in kind pursuant to HRS Chapter 668; (2) that the court erred in imposing the CPR on the parties in the partition action; and (3) that the circuit court erred by not ordering the sale of the Property since condominiumization of the Property is greatly prejudicial to the owners.

The Zarko Defendants argue on their first point that the general rule of centuries of partition decisions is that the purpose of partition is to sever unwanted ties, resulting in severalty, and not to create new ties to co-owners. Condominium

ownership, they assert, is characterized by compliance with binding contracts, like a declaration and bylaws, that our condominium law requires; in this way, a CPR does not fulfill the separating purpose of a partition action. They contend it is a misinterpretation of HRS Chapter 668's grant of equity powers to a partition court, and an overstepping of its authority absent clear legislative intent, for a circuit court to bring the two statutory chapters together; thus creation of a CPR is not the "usual practice of courts of equity in cases of partition." HRS § 668-1.

To their second point, the Zarko Defendants assert that a court-ordered CPR forces unwilling parties to contractually entangle their relationships with their adversaries. And in this case, they argue that the requirements in HRS Chapter 514B that obligate fee owners to agree to the creation of a CPR, and sign necessary documents, were not met because the partition commissioner, not the parties, signed those documents. Further, they argue that a CPR declaration and bylaws dictate owners' obligations, restrictions on property uses, and procedures for future group decision-making (voting behaviors) with other CPR owners; these contracts impose a new system of co-ownership on unwilling owners, which conflicts with a partition's relationship-severing objectives as set forth in case law.

16

Asserting that the court's partition of the Property by CPR was unlawful, and the parties and commissioner had been unable to timely subdivide the Property, the Zarko Defendants contend they were greatly prejudiced by this partition in kind, and that the circuit court erred when it did not order partition by sale.

The Plaintiffs counter that the partition by CPR should be affirmed and the case be remanded to the circuit court for further proceedings relating to the distribution of the CPR units. On the matter of the lawfulness of the circuit court's power to partition by CPR, Plaintiffs argue that the legislature intended to authorize a partition by CPR pursuant to HRS § 668-7(7). They assert that when HRS § 668-7 is read in pari materia with HRS Chapter 514B, HRS § 668-7(7) authorizes the partition court to exercise any remedy available to a circuit court in a civil action, and that the statute did not expressly exclude the creation of a CPR to partition a property. In support of their contention, Plaintiffs cite Kimura v. Kamalo, in which this court affirmed the trial court's order placing multiple defendants into a continuing co-tenancy in a partitioned parcel. 106 Hawai'i 501, 507-08, 107 P.3d 430, 436-37 (2005). This, Plaintiffs argue, is not different from the co-ownership in a CPR.

17

If the appellate court were to find the circuit court's partition by CPR unlawful, Plaintiffs further argue that the Zarko Defendants failed to establish that a partition in kind was impracticable and greatly prejudicial to the owners.

The Zarko Defendants subsequently filed an application for transfer, which this court granted.

## II. Standards of Review

### A. Action for Partition

A partition action is an action in equity; therefore, we review a court's order of partition for abuse of discretion. Kimura, 106 Hawai'i at 506-07, 107 P.3d at 435-36; see also Sugarman v. Kapu, 104 Hawai'i 119, 124, 85 P.3d 644, 649 (2004). "An abuse of discretion occurs where the court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Deutsche Bank Nat'l Tr. Co. v. Kozma, 140 Hawai'i 494, 498, 403 P.3d 271, 275 (2017) (cleaned up).

### B. Statutory Interpretation

"'The interpretation of a statute is a question of law. Review is de novo, and the standard of review is right/wrong.'" Kimura, 106 Hawai'i at 507, 107 P.3d at 436 (quoting Sugarman, 104 Hawai'i at 123, 85 P.3d at 648).

18

This court's construction of statutes is shaped by the

following rules of interpretation:

> First, the fundamental starting point for statutory
> interpretation is the language of the statute itself.  Second,
> where the statutory language is plain and unambiguous, our sole
> duty is to give effect to its plain and obvious meaning.  Third,
> implicit in the task of statutory construction is our foremost
> obligation to ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from the language
> contained in the statute itself.  Fourth, when there is doubt,
> doubleness of meaning, or indistinctiveness or uncertainty of an
> expression used in a statute, an ambiguity exists.
> 
> When there is ambiguity in a statute, the meaning of the
> ambiguous words may be sought by examining the context, with
> which the ambiguous words, phrases, and sentences may be
> compared, in order to ascertain their true meaning.  Moreover,
> the courts may resort to extrinsic aids in determining
> legislative intent, such as legislative history, or the reason
> and spirit of the law.

State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177

(2009) (cleaned up) (quoting Citizens Against Reckless Dev. v.

Zoning Bd. of Appeals of the City & Cty. of Honolulu, 114 Hawai'i

184, 193–94, 159 P.3d 143, 152–53 (2007)).

### III.  Discussion

**A.  The purpose of a partition action pursuant to HRS Chapter 668 is to divide and separate co-tenancies to allow the owners to go their own ways.**

The Zarko Defendants challenge the circuit court's

authority to lawfully partition a property by CPR under the

applicable partition statutes.[7]  They assert that HRS §§ 668-1

---

[7]    In their answer to the Zarko Defendants' opening brief, the Plaintiffs claim that the appellate court should dismiss their appeal for lack of appellate jurisdiction.  Upon review, the court's Final Judgment of April 18, 2023, confirming the commissioner's court-ordered partition of the Property into a four-unit CPR and the commissioner's request to dispose of the units

and 668-7 do not empower a circuit court to order a partition by CPR pursuant to HRS Chapter 514B because the purpose of a partition is to sever ties, which partition by CPR does not accomplish.  Plaintiffs argue that the circuit court made no error, as it was authorized by statute and case law to partition the Property into a CPR; that there was nothing unlawful about the creation of the CPR pursuant to HRS Chapters 514B and 668; and that the Zarko Defendants did not suffer great prejudice to their interests with the CPR order.

We disagree with the Plaintiffs.  Our partition statutes and body of case law do not authorize partition by CPR as a lawful form of partition pursuant to HRS Chapter 668.

At the time this partition action was filed, HRS § 668-1 (1993) stated:

> When two or more persons hold or are in possession of real
> property as joint tenants or as tenants in common, in which one
> or more of them have an estate in fee, or a life estate in
> possession, any one or more of such persons may bring an action

_____

(October 12, 2022 motion), complied with the requirements of the applicable rules, including HRCP Rule 54(b).  The appeal was filed pursuant to HRS § 641-1 and HRCP Rules 54(b) and 58.  Therefore, this court has appellate jurisdiction over this matter.  See Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 117-19, 869 P.2d 1334, 1336-39 (1994).

Additionally, Plaintiffs claim that the Zarko Defendants' appeal should be dismissed because laches and judicial estoppel bar their appeal.  Both arguments are without merit.  We note that the Zarko Defendants acted timely and expeditiously when they appealed the circuit court's Final Judgment a day after its entry.  And the partition commissioner requested the authority to assign all co-tenants their undivided interest in the entirety of the Property under the new CPR that the Zarko Defendants objected to.  To suggest the Zarko Defendants adopted inconsistent legal positions on the CPR creation and assignment is to misrepresent the record.  Even if properly raised, Plaintiffs' claims fail for lack of merit.

in the circuit court of the circuit in which the property or some
part thereof is situated, for a partition of the property,
according to the respective rights of the parties interested
therein, and for a sale of the same or a part thereof if it
appears that a partition cannot be made without great prejudice
to the owners.  The several circuit courts shall have power, in
any action for partition, to proceed according to the usual
practice of courts of equity in cases of partition, and according
to this chapter in enlargement thereof.

HRS § 668-1.

HRS § 668-7 (1993) sets forth the court's powers in

partition actions, providing in relevant part:

The court shall have power . . . :

. . .

(4) To cause the property to be equitably divided between the
parties according to their respective proportionate interests
therein, as the parties agree, or by the drawing of lots;

(5) To set apart any particular portion or portions of land to
any particular party or parties who by prior occupation or
improvement or otherwise may be equitably entitled thereto, and
make any proper adjustment or equalization thereof by the sale of
other portions and the application of the proceeds for such
purpose, or as a condition of any such particular allotment to
require payment by the parties of any value of the portion set
apart to them in excess of their proportionate interest in the
value of the whole property;

(6) To divide and allot portions of the premises to some or all
of the parties and order a sale of the remainder, or to sell the
whole, where for any reason partition in kind would be
impracticable in whole or in part or be greatly prejudicial to
the parties interested, and by judgment or judgments to invest
the purchaser or purchasers with title to any property sold, and
use the proceeds to equalize the general partition; [and]

(7) To exercise any other power pertaining to a circuit court in
a civil action.

When partition of two or more separate tracts or parcels of
land is sought, the whole share of any party in all of them may
be set apart to the party in any one or more of the tracts or
parcels.  Any plan for a subdivision shall, before approval of
the court, be subject to approval by the planning department of
any county having laws and regulations covering subdivisions,
applicable thereto.  If action by the planning department on the
proposed subdivision is unreasonably delayed, the court may order

> the planning department to appear and show cause why the subdivision should not be approved by the court.

HRS § 668-7 (emphases added).

The statutes provide for partition in kind or partition by sale, with a partition by sale occurring if a partition in kind is "impracticable" or "greatly prejudicial" to the owners. HRS § 668-7(6); see Pioneer Mill Co. v. Ward, 37 Haw. 74, 87 (Haw. Terr. 1945) ("At common law and in equity partition was always in kind, regardless of the difficulty or inconvenience of doing so, unless the parties agreed to a sale and a division of the proceeds."); see also Lalakea v. Laupahoehoe Sugar Co., 35 Haw. 262, 291 (Haw. Terr. 1939) ("[T]he circuit judge at chambers has jurisdiction to partition property either in kind or sale for division[.]").

> 1. **The terms "partition" and "partition in kind" in HRS §§ 668-1 and 668-7 instruct our courts to seek division of co-ownership into severalty.**

When interpreting a statute, a court's "foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself."  Gillan v. Gov't Emps. Ins. Co., 119 Hawai'i 109, 115, 194 P.3d 1071, 1077 (2008) (cleaned up).

In HRS Chapter 668, the term "partition" is not specifically defined, but as stated, the chapter references and

22

explicitly provides for only two types of partitions: "partition in kind" and partition by sale.  HRS § 668-7.  As to a partition in kind, the chapter further alludes to the severalty component of partitions in kind with references to "set apart," "separate tracts or parcels of land," and "subdivision."[8]  HRS § 668-7.

When a term is not statutorily defined, "this court may resort to legal or other well accepted dictionaries as one way to determine [its] ordinary meaning."  Gillan, 119 Hawai'i at 115, 194 P.3d at 1077 (cleaned up).

Black's Law Dictionary defines "partition" as "[t]he act of dividing; esp., the division of real property held jointly or in common by two or more persons into individually owned interests.  Also termed 'partition in kind.'"  Black's Law Dictionary 1347 (11th ed. 2019) (emphasis added).  The dictionary entry further illustrates the term's meaning by quoting from James W. Eaton's Handbook of Equity Jurisprudence:

> Partition is the segregation of property owned in undivided shares, so as to vest in each co-owner exclusive title to a specific portion in lieu of his undivided interest in the whole. The term 'partition' is generally, but not exclusively, applied to real estate.  All kinds of property may be partitioned by the voluntary acts of the owners.  In the case of real estate, this is usually accomplished by a conveyance or release, to each co-tenant by the others, of the portion which he is entitled to hold in severalty.

---

[8]     Although HRS Chapter 668A (2016) (eff. 2017) applies to partition actions filed after January 1, 2017, under that chapter, HRS § 668A-2 defines "partition in kind" as "the division of heirs property into physically distinct and separately titled parcels."  HRS § 668A-2.

Id. (quoting James W. Eaton, Handbook of Equity Jurisprudence 571 (Archibald H. Throckmorton ed., 2d ed. 1923)).

After the 1840s Mahele, which created and registered Western-style real property in the Kingdom of Hawai'i, a partition statute empowering Hawai'i's courts to divide and separate co-ownership interests in real property was created. HRS § 668-1 descends from the Kingdom's statutes. As an example, the English language partition statute from 1884 empowering this court to hear these suits in equity read:

> Said justices shall severally have power at chambers, to admeasure dower and partition real estate. . . . When the partition of real estate cannot be made without great prejudice to the parties, the judge may order a sale of the premises and divide the proceeds.

1884 Compiled Laws of the Hawaiian Kingdom § 852, at 243. The Hawaiian language publication of the same statute read:

> He mana ko kela ko keia o na Lunakanawai o ka Aha Kiekie ma ke keena, e hookaawale i ka waiwai hapakolu o na wahine kanemake, a e mahele i ka waiwai paa. . . . Ina he mea hiki ole ke mahele i ka waiwai paa me ka poino ole o na ona o ua waiwai nei, alaila e hiki no i ka Lunakanawai ke kauoha ae e kuai ia'ku [sic] ua waiwai paa nei, a e mahele i ke dala i loaa mai.

1889 Na Kanawai Kivila o Ke Aupuni Hawaii § 852, at 265.[9] Our interpretation of what "partition" means in HRS Chapter 668 is guided by the meaning of "mahele" and the developments of land law in our jurisdiction.

---

[9]  Orthography of the 'ōlelo Hawai'i maintained from the published compiled laws.

The Pukui and Elbert <u>Hawaiian Dictionary</u> defines "mahele," inter alia, as a verb meaning "to divide, apportion, cut into parts." Mary Kawena Pukui and Samuel H. Elbert, <u>Hawaiian Dictionary</u> 219 (6th ed. 1986). As this court noted in <u>McBryde Sugar Co. v. Robinson</u>, "[w]hen used in the context of land titles, reference [for the term 'mahele'] is usually to the Great Mahele of 1848, which accomplished the division of the undivided interest in land between the King on one hand and the chief and konohikis on the other." 54 Haw. 174, 182 n.5, 504 P.2d 1330, 1336 n.5 (1973). In our land law, "mahele" can also be the noun meaning "separate parcels" of land. <u>See</u> <u>Miller v. Heirs of Hiwauli</u>, 68 Haw. 401, 402, 716 P.2d 161, 161 (1986) ("[T]he crucial finding was that Keaka conveyed to each of his nine children his 1/2 interest in one of nine separate parcels called 'maheles[.]'").

In a mid-nineteenth-century case, this court provided historical context for land law in our jurisdiction:

> [I]t becomes necessary to examine <u>the nature of the land tenures</u> in this Kingdom, and <u>particularly the great Mahele of 1848</u>. . . . [I]t was finally settled and fully established that there were but three classes of persons having vested rights in the lands of this Kingdom. First, the King; second, the landlords, comprising the chiefs and Konohikis; third, tenants, who afterwards became "Kuleana-men." But as <u>each of these classes had rights in most of the lands, in a descending scale</u>, as it were, it <u>became necessary to separate and define the rights of each--or, rather, to partition in severalty to each one his proper share of the whole</u>.

<u>Harris v. Carter</u>, 6 Haw. 195, 197-98 (Haw. Kingdom 1877),

overruled by <u>Galt v. Waianuhea</u>, 16 Haw. 652 (Haw. Terr. 1905) (emphases added). Prior to the Mahele, "each of these classes had rights in most of the lands, in a descending scale." <u>Id.</u> at 198. These acts were undertaken starting in 1848 to separate and distinguish the land rights of the King from the rights of the chiefs and konohiki from the rights of the maka'āinana,[10] so that Western-style ownership and private property could be established. This dividing of co-mingled relationships into severalty is what mahele accomplished.

Interpreting "mahele" or "partition" benefits from consideration of the law within this historical framework. The purpose of mahele/partition was to disentangle parties' property interests into severalty. It follows that "partition" in HRS Chapter 668, including "partition in kind," aims to separate and divide co-ownership of property into distinct interests such that owners may, without restrictions, go their separate ways.

2. **The "usual practice of courts of equity in cases of partition" upholds the purpose of partition to separate co-ownership, not intensify or create co-ownerships in new forms.**

The Zarko Defendants argue that the "usual practice of courts of equity in cases of partition" (HRS § 668-1) cannot be

---

[10] Pukui and Elbert define a "konohiki" as a "headman of an ahupua'a land division under the chief" and "maka'āinana" as, relevantly, "people in general," or citizens, subjects. <u>Hawaiian Dictionary</u> 166, 224.

interpreted as authorizing a court to order a "partition in kind" by creating and imposing a CPR.  Plaintiffs argue that this court's decision in Kimura affirms that the usual practice of partition courts includes the ability to partition by CPR.

In Sugarman v. Kapu, this court noted:

> It is evident from HRS § 668-1 that the legislature intended that the provisions of HRS chapter 668 supplement the court's equitable power.  The statute recognizes the power of the courts to act according to the usual practice of courts in equity, and according to this chapter in enlargement thereof.  Traditionally, courts of equity exist for the purpose of doing equity by ensuring that no injustice is done to either party involved.  Inherent in the power to do equity is, of necessity, discretion to accomplish a just result under the circumstances.  As indicated by HRS § 668-1, the legislature did not mean to restrict the powers granted to the circuit courts to only those enumerated in the specific provisions of HRS chapter 668.

104 Hawai'i 119, 124, 85 P.3d 644, 649 (2004) (emphases added) (cleaned up).

Whether a relatively new form of property organization and holding, i.e., a CPR, is included in our courts' "usual practice" of equitable remedy-fashioning in partition suits is at the center of the parties' contention.  The phrase "the usual practice of courts of equity" is expansive, not limited by the statute, which states clearly that it is "in enlargement thereof," i.e., that the statute enhances a court's traditional equity powers in partition actions.  HRS § 668-1.

Generally, the power of courts in equity to partition real property is longstanding, traceable to English historical roots

in the judicial division of female co-parceners' ownership

rights to inherited lands and the statutory actions to divide

co-tenancies seen in England during King Henry VIII's rule.[11]

The general rule of the usual practice of equity courts in

partition actions was summarized by this court in Brown v.

Holmes:

> "A writ of partition lies at common law for one or more parceners
> against the other or others," Freeman on Cotenancy and Partition,
> Sec. 420, the reason being "that as tenancy in coparcenary arose
> by operation of law, it was only proper that the law should
> afford the means of severance." 3 Pomeroy's Equity
> Jurisprudence, 2 ed. Sec. 1386, n.5. . . . "As early as the reign
> of Elizabeth, partition became a matter of equitable cognizance;
> and now the jurisdiction is established as of right in England
> and in the United States." Pomeroy, Sec. 1387. It is clear that
> partition either of the estate or of the proceeds of its sale is
> a matter of right.
> By statute[,] a sale may be ordered and the proceeds
> divided if partition in kind cannot be made "without great
> prejudice to the parties." [Revised Laws of Hawai'i ("RLH") §
> 1648 (1905)]

19 Haw. 268, 276 (Haw. Terr. 1909) (final citation omitted)

(emphases added).

In Campbell v. DePonte, we affirmed the circuit court's

order pursuant to HRS § 668-7(4) that divided a property into

smaller lots, holding:

> We have said that, under the provisions of HRS § 668-1, the
> circuit judge had jurisdiction to partition the property subject
> to suit by partition in kind or sale for division in whole or in
> part. . . . There is no doubt that the usual practice of courts
> of equity, to which HRS § 668-1 refers, includes the partition in
> kind of the common property, where that is practicable, and
> favors a partition in kind over partition by sale.

---

[11] See John G. Casagrande, Jr., Acquiring Property Through Forced
Partitioning Sales: Abuses and Remedies, 27 B.C.L. Rev. 755, 758-83 (1986)
(citing to 31 Hen. 8, ch. 1 (1539)).

57 Haw. 510, 514, 559 P.2d 739, 742 (1977) (cleaned up).

This "usual practice" of a partition court to divide a property "in kind," i.e., into smaller lots, was also acknowledged in a dissenting opinion in a partition suit in which the majority held that the subject property should be sold because partition in kind was impracticable. Chief Justice Richardson, in dissent, maintained:

> At common law the action for partition of land was designed to allow co-tenants to divide land held jointly. The then existing law only allowed a division in kind, i.e., an actual division of the property. 4A Powell, Real Property, § 612 at 650. More recently statutes have been enacted in almost every jurisdiction to comprehensively deal with the partition remedy. These statutes established the power and jurisdiction of a court to effect partition by a sale of the property with a division of the proceeds where circumstances are such that a division in kind would be injurious or impractical. However, even given the various modifications of the original remedy, the purpose of partition has remained the same, that is:
>
>> [T]o provide a means by which people, finding themselves in an unwanted common ownership, can free themselves from the relationships incidental to such common ownership.

Chuck v. Gomes, 56 Haw. 171, 178-79, 532 P.2d 657, 661-62 (1975) (Richardson, C.J., dissenting) (citations omitted) (emphases added). Chief Justice Richardson further observed that in determining whether "partition in kind is impracticable," "the focus should be placed on whether physical division of the

subject property is . . . susceptible of partition in kind."[12]
Id. at 178, 532 P.2d at 661.

**B.   Under HRS Chapter 668, a court may not partition by CPR because our existing partition laws do not permit a court to replace co-tenancies in the entirety with increased co-ownership entanglements and new contractual obligations imposed by a court on the parties.**

Partition by CPR undercuts HRS Chapter 668's objectives and purpose.  Our partition statutes and case law clearly set forth that a court may either partition a subject property in kind or sell all or part of the property and divide the resulting proceeds (and, if applicable, parcels) equitably between the parties.  We have held that HRS § 668-1 empowers a partition court to partition in kind or sale for division in whole or in part.  Lalakea, 35 Haw. at 293.  And our partition law favors a partition in kind where practicable over partition by sale. Campbell, 57 Haw. at 514, 559 P.2d at 742 (citing 2 American Law of Property § 6.26 (1952); 4A Powell on Real Property, § 612 (Rohan Rev. 1976)).  But the particular nature of the legal entanglements between owners of CPR units subverts the fundamental purpose of partition while maintaining an illusion of an "in kind" division of land.

---

[12]   The court ascertained whether the subject property could be divided into two "separate" parcels or nine "individual" parcels.  Id. Gomes, 56 Haw. at 173-74, 532 P.2d at 659.

The Zarko Defendants argue that a CPR is not provided for in our laws as an equitable remedy under HRS § 668-7 because not only are the lingering and binding co-ownerships of a CPR contrary to the histories of partition into severalty, but also because Kimura affirmed severalty as the general rule of partition.  Plaintiffs argue the opposite, contending that Kimura, which affirmed the trial court's order placing multiple defendants into a continuing co-tenancy on a single, subdivided parcel, implicitly approved a circuit court's power to partition by CPR.

In Kimura, the majority co-owner sought partition of multiple parcels on the island of Hawai'i held in co-tenancy with multiple defendants, some of whom were non-responsive to the lawsuit.  The trial court initially found plaintiffs held an undivided 88% interest in the subject property, with defendants holding a 12% undivided interest.  Kimura, 106 Hawai'i at 504, 107 P.3d at 433.  The court then ordered the commissioner to compare the costs between a two-lot and a three-lot subdivision of the property.  Id. at 505, 107 P.3d at 434.

Responsive defendants requested that the court subdivide the property into three lots, with one for the plaintiffs, one for their family group of defendants, and the third lot to be sold at a later date.  Id.  The commissioner told the court that

both a two-lot and three-lot subdivision were possible, but that the three-lot subdivision would cost significantly more than creating a two-lot subdivision. Id. The trial court ordered the creation of the two-lot subdivision, assigning the larger parcel to the plaintiffs and the smaller parcel in undivided co-tenancies to all of the defendants, including the non-responsive parties. Id. This court affirmed the trial court's order creating the two-lot subdivision and its disposition of the smaller parcel to the responsive and non-responsive defendants in undivided co-tenancy, noting that defendants were free to pursue further partition and recovery of costs from their non-responsive co-tenants. Id. at 510-11, 107 P.3d at 439-40.

The instant case is clearly distinguishable from Kimura. The circuit court in Kimura did not order the creation of a CPR but instead ordered all defendants into a continued co-tenancy on a subdivided parcel. Id. at 505, 107 P.3d at 433. This preserved the equitable interests of the non-responsive defendants by assigning that parcel to all defendants in the suit, while allowing the majority owner to take its interest in severalty. In contrast to the instant case, Kimura's parties were not forced into new forms of co-ownership. Nor were the Kimura defendants bound closer together in contracts that dictated procedures and voting required to make changes on their

land as the Zarko Defendants are subjected to with the court-ordered CPR.  Instead, the Kimura defendants were free to pursue further disentangling of their unwanted co-tenancies because they retained the right to partition, and they "were not prohibited from filing a future partition action as between them and the [non-responsive party.]"  Id. at 510, 107 P.3d at 439.

Here, the Zarko Defendants are co-owners of the CPR with their relatives, and they have been bound unwillingly by the court to CPR declarations and bylaws that shape the rights, responsibilities, and future actions of the Property's co-owners.  See HRS Chapter 514B.  This exceeds Kimura.  The instant Property's CPR documents create a decision-making association, common interests, and common elements that all owners must abide by.  And HRS Chapter 514B's requirements restrict the Zarko Defendants and the other parties from the relief of partition unless they vote according to their governing documents to remove parts of the Property from the CPR.  This binds rather than frees the parties from the relationships incidental to common ownership, thus thwarting the objectives of a partition action.

Kimura does not authorize a court to fashion a partition remedy pursuant to HRS § 668-7 that undermines the purpose and objectives of our partition or "mahele" statutes.  A CPR is not

33

the same as co-tenancy in the entirety. A CPR further entrenches, complicates, and joins parties instead of relieving them of the obligations and interactions that come with co-ownership of a property, and foils the fundamental severing objectives of a partition action.

The Connecticut Supreme Court's reasoning in Wilcox v. Willard Shopping Center Associates, cited by the Zarko Defendants, is persuasive. 544 A.2d 1207, 1208 (Conn. 1988). Wilcox is instructive in its observations on the excessive entanglements that a partition by CPR, if lawful, would impose upon contentious parties seeking partition relief from their co-ownership of a property. Wilcox involved a partition action in which a majority co-owner of a shopping center sought severance of his co-tenancy by sale. Id. at 1209. Defendants urged the trial court to order a CPR of the commercial property instead of attempting to divide the shopping center in kind, as it was clear from the layout of the structures and their shared utilities that a partition in kind was impracticable. Id. The trial court determined that it was impracticable to partition the shopping center in kind and that a partition of the property could not be effected by application of Connecticut's CPR statute, the Common Interest Ownership Act (CIOA). Id. at 1210 (citing General Statutes §§ 47-200 through 47-293).

34

On appeal, the <u>Wilcox</u> court affirmed the trial court's ruling and held that the Connecticut legislature did not enact its CPR statute "as an additional vehicle to effect partition in kind." <u>Id.</u> at 1211. Noting that Connecticut's partition statutes and its CIOA did not expressly rule out such a partition remedy, the <u>Wilcox</u> court stated its examination of the statutes and policies revealed an incongruity. The court explained:

> A plaintiff in an action for partition seeks to sever or dissolve involuntary joint ownership in real property. In furtherance of that objective, a court is limited to rendering a judgment of either partition in kind or by sale of the real property[,] thus terminating the ownership relationship between the parties.

> On the other hand, [the] CIOA affords the purchaser of a condominium fee simple ownership of his unit while sharing with other unit owners the burdens and benefits of the community's common elements. [The] CIOA is a detailed statutory scheme governing the creation, organization and management of common interest communities and contemplates the voluntary participation of the owners. It entails the drafting and filing of a declaration describing the location and configuration of the real property, development rights, and restrictions on its use, occupancy and alienation; the enactment of bylaws; and the establishment of a unit owners' association; and an executive board to act on its behalf. It anticipates group decision-making relating to the development of a budget, the maintenance and repair of the common elements, the placement of insurance, and the provision for common expenses and common liabilities. The Condominium Act imposes additional requirements pertaining, for example, to the amendment of the declaration and bylaws; and to the allocation of profits and expenses. Further, a unit owner seeking to sell his interest to a third party would require the involvement of the unit owners' association in order to provide certain information required by [the CIOA] to be disclosed to the purchaser.

> In sum, were the court to superimpose a condominium on the shopping center, relations between [defendants and plaintiff] would be further complicated. Clearly, this is not the goal to be achieved by an action for partition of real property, and would run counter to the policy sought to be advanced by the statutes governing partition. Rather than dissolving the co-

> tenancy between the parties, it would compel [plaintiff] to remain a joint owner with [defendants] at least until such time as the condominium is established.  We can discern no legislative intent to delay the severance of joint ownership by creation of a condominium out of the property to be partitioned.  We would overstep the bounds of our authority if, in the absence of clear legislative intent, we were to engraft the provisions of [the] CIOA onto the partition statutes to achieve the result sought by [defendants].  Accordingly, we hold that the trial court correctly concluded that imposition of a condominium is not legally possible.

Id. at 1211-12 (citations omitted) (emphasis added).

Pursuant to our laws in HRS Chapter 514B, a CPR binds owners to certain obligations and demands, in contrast to the limited obligations of tenants-in-common owning a non-CPR parcel.  Under HRS Chapter 514B, parties are forced into tighter, more intertwined relationships than existed pre-CPR.  The circuit court in this case exceeded its equitable authority in the absence of clear legislative intent, instead impermissibly "engrafting" HRS Chapter 514B into HRS §§ 668-1 and 668-7(7) with its partition by CPR.  See Wilcox, 544 A.2d at 1212.  For example, the Declaration filed for the CPR in the present case sets forth "common elements" for which the "right to partition or divide any part of the common elements shall not exist," except as provided for by HRS Chapter 514B.  Further, the Declaration indicated that each condominium unit, of which there were four, comes with a 25% common interest.  Plaintiffs argued that the 'ohana groups of Gordon, James, and William should each get one CPR unit--the units they built on the

36

Property--while the 'ohana groups of Cathlen and Arnette, collectively, should get the fourth unit.

As the Property's CPR Declaration allocates 25% common interest per unit, this sets up the family members, who have been struggling for nearly fifteen years to sever their co-ownership interests, for future and continuing adversarial struggles.  In the Bylaws, a quorum of owners for the purposes of owner association meetings requires "a majority of the Owners," defined as "the Owners of Units to which are appurtenant more than fifty percent (50%) of the common interests as established in the Declaration."  When determining decision-making by voting, the Bylaws further state: "The vote of a majority of the Owners, as defined [above], shall be binding on all Unit Owners for all purposes, except as otherwise provided in the Declaration or in these Bylaws."  With this percentage required for a quorum that then has binding decision-making powers, under Plaintiffs' proposed disposition of the CPR units, Plaintiffs alone would be able to carry and control association meetings and decision-making votes.

It is difficult to imagine how these family groups, like the adversarial co-tenants in <u>Wilcox</u>, can avoid increasing conflicts between them when bound to act according to the CPR Declaration and Bylaws for the simple use and maintenance of

their Property.  This kind of embroilment of adversaries is excessive and would continue deeply contentious relationships between unwilling parties rather than free them.  The argument that a later sale of a unit would accomplish such relief for an owner does little to acknowledge the requirements of HRS §§ 668-1 and 668-7, especially the requirement that a partition remedy not greatly prejudice the owners.  Here, a CPR at its creation is an imposition upon unwilling parties and greatly prejudices the owners with greater restrictions on their property rights, dictation of future acts, and tightening of unwanted relationships.

Our case law and history of land rights confirms that the fundamental purpose of partition or mahele is to divide and separate mingled co-ownership interests.  It is also the case that our courts should retain the flexibility in equity to order continuing co-tenancies when a partition in kind results in subdivided parcels involving non-responsive parties, as in Kimura.[13]  But it is not lawful for a circuit court to order a

---

[13]    Regarding the role partition suits have played in the histories of land dispossession, especially in Native Hawaiian families, Chief Justice Richardson's dissent in Gomes references these historical stakes, even as it reaffirms the general rule of partition determinations:

> Undoubtedly there will be circumstances which justify the invocation of partition by judicial sale under HRS §§ 668-1 and 668-7(6).  In the situation where the statutory grounds are met the preference for actual division of property must yield to

partition by CPR. Such a partition, in full compliance with HRS Chapter 514B, would further bind parties and limit their respective rights in a way that is excessive and greatly prejudicial to the owners. HRS § 668-1. The circuit court abused its discretion by ordering a partition of the Property by CPR.

C. **The circuit court abused its discretion in not ordering partition by sale because partition in kind was impracticable and greatly prejudicial to the owners.**

The Zarko Defendants argue that the circuit court erred when it did not find that partition in kind was impracticable and greatly prejudicial to the owners, and when the court did not order partition by sale. We agree.[14] We review a circuit

_____

partition by judicial sale. But let us recognize that such preference for partition in kind should not be so easily disregarded. "Mindful of our Hawaiian heritage," we must not lose sight of the cultural traditions which attach fundamental importance to keeping ancestral land in a particular family line.

56 Haw. at 180, 532 P.2d at 662. A court following Kimura and other cases can balance co-tenants' historical, familial, and practical relationships to their lands in its determinations of the equities, which could include maintaining co-tenancies in a subdivided parcel so as not to completely remove the possibility of future amicable settlements or buy-outs of co-tenants who want to sell.

[14] Plaintiffs assert the Zarko Defendants' request for relief through sale of the Property should be denied because the Zarkos failed to pay back taxes when the circuit court ordered the parties to pay what was required to keep the subdivision process moving forward. We note that the circuit court then ordered Plaintiffs to pay the back taxes and seek a lien against the Zarko Defendants' interests if they so desired. The matter of back taxes allegedly owed by the parties is not properly before us; and on remand, it is a matter for the circuit court to address and determine equitable disposition, including the allocation of offsets, costs, and fees.

court's decision to order a partition in kind instead of a partition by sale under the abuse of discretion standard.

In a partition action, division of a property by physical partition is always favored in this jurisdiction both legally and equitably under HRS Chapter 668.  Campbell, 57 Haw. at 514, 559 P.2d at 742.  However, when a partition in kind is impracticable or cannot be accomplished without great prejudice to the owners, a court has the power to order the sale of all or part of the subject property.  HRS § 668-1.

In Pioneer Mill, this court noted, "[t]he generally accepted test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than the share of the money equivalent that could probably be obtained for the whole."  37 Haw. at 87-88  "Great prejudice" can be demonstrated in diminution of value due to division, excessive cost of division, or where division would render substantial portions of the property unusable due to physical features and/or regulatory compliance.  Holmes, 19 Haw. at 276.  Brown further set out a non-exclusive list of factors to be considered in balancing the equities and determining great prejudice:

> The varied conditions of the property, the variety of uses to which different portions can be put, the absence of profitable use to which much of it is susceptible without large expenditure of time and money, and taking water from non-agricultural to

40

> agricultural land,--all this presents a complicated problem, the solution of which, without sacrifice of, or injustice to, the interests of some one or more of the co-tenants, is extremely difficult. Considerable discretion must be allowed in determining whether or not under all the circumstances partition would greatly prejudice the common interests. On the other hand, the uncertainty of the tenure and the chances of its early termination might prevent a sale for a sum of money which, when divided among the co-tenants, would equal the profit which each of them can make out of the property during the balance of the term of the lease.

Id. at 276.

Here, in reviewing the circuit court's orders to partition the Property in kind through subdivision and then by CPR, we recognize that Plaintiffs and the Robinson Defendants have expressed a strong desire to remain on the Property, and that the equities include considering what a sale of the Property to a party outside the current family co-owners could do to their ability to stay in their homes, where their 'ohana groups have lived for several generations. But the Zarko Defendants and Forsythe Defendants' experiences of mounting costs and taxes owed are burdens they would not have to bear if they had an earlier opportunity to separate and free their interests in the Property from their siblings and cousins' interests.

In the commissioner's report filed in the circuit court eleven years ago, prior to the CPR creation, the partition commissioner concluded that the Property could not be physically divided without great prejudice to the owners who did not wish to retain an interest in the Property, and therefore, he

recommended sale of the Property as a whole.[15]  After the court rejected this recommendation, the commissioner proceeded as the court ordered, but never submitted a subsequent report altering this opinion.

The commissioner stated that while he was "painfully mindful" of the fact that the Property was "family land and all involved had a deep, multi-generational connection with it[,]" he determined that it was not reasonable "to require a majority of owners to expend significant funds to divide the Property when that division will have a severe negative impact on the value and utility of the Property for those majority owners, and will only benefit the minority owners."

"In exercising its discretion, the court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned[.]"  Sugarman, 104 Hawaiʻi at 124, 85 P.3d at 649 (quotation omitted).  We review the proceedings and record in this case to determine whether the circuit court appropriately weighed the equities in not ordering partition by sale.

---

[15]     The commissioner then recommended that the Property not be auctioned, "as may otherwise be allowed by HRS Chapter 668" because "[i]n fairness to all, an auction sale in a situation such as this stands little chance of maximizing potential value."  The commissioner instead recommended that the Property be listed and sold "in the normal course" with a qualified realtor chosen by the commissioner or clerk vested by the court.

In this case, the impracticalities and barriers to subdivision of the Property have been multiple despite the parties' attempts over many years to subdivide.  They include: aged, faulty or errant electrical wiring or other structures and property features that would be non-compliant with county code were it not for grandfathering the structures as they are; the associated problems of that grandfathering, as any improvements or rebuilding of structures would require the Property's residences and infrastructure be brought up to modern code; the requirement that property taxes be current before subdivision was approved, which not all co-owners--especially the non-resident owners--could afford; and the costs of making property improvements required by the County or seeking variances necessary for permission to subdivide.

The commissioner considered that the parties had "intra-family issues among family groups living on the Property," which "play[ed] into a desire to sell to achieve physical separation." Further, the time and cost of subdividing the Property "would be significant," and no party at the time was willing or able to underwrite the costs.  The estimated two-and-a-half to five-year time frame for completing a subdivision, according to the commissioner, weighed against division, "as that would be additional time during which the non-occupant parties would

continue to receive no beneficial use of the Property."  "This would be in addition to time post-subdivision that would be required to market and sell portions of the Property for those who do not wish to retain an interest."

The commissioner also observed the "unique" quality of the Property "in that it occupies its own point of land and is without oceanside neighbors.  This level of privacy and location will increase value well beyond a similarly sized property that is bounded by neighbors."  Therefore, he opined that "[a]ny division of the land would, in my estimation, negatively impact the monetary value of the Property.  I am mindful of the fact that the value of the Property is not merely monetary, but as holders of 63% of the Property" had, at that time, "expressed a clear desire to sell, monetary value takes on a greater weight and importance."

We agree that despite the significant and substantive efforts that these families have engaged in over decades to divide their family property into smaller parcels to meet the needs of the 'ohana groups that want to stay and those who are not residing there, division of the Property in kind has been impracticable and is greatly prejudicial to the owners.

If a court determines a partition in kind to be impracticable or greatly prejudicial to the owners, a court has

the authority to order a sale of the property which this court has recognized to be an "absolute right." As this court noted in Pioneer Mill,

> [t]he manifest hardship arising from the division of property of an impartible nature has been almost universally avoided by statutory provisions which give to a person entitled to a partition the right to have the premises sold, if they are so situated that partition cannot be made, or that it would be manifestly to the prejudice of the parties if the property were not sold rather than partitioned. . . . A sale and division of the proceeds among the cotenants is a substitute for partition in kind. However, partition by sale is an absolute right when the conditions which authorize a sale are found to exist.

37 Haw. at 87 (emphasis added).

All the parties to this partition action have at least once requested partition of the Property by sale, including the Plaintiffs, whose initial lawsuit sought a partition by sale in the alternative to partition in kind. All the parties have likewise agreed multiple times before and during the partition proceedings to put the Property up for market sale.

As a partition in kind of the Property is impracticable and greatly prejudicial to the owners, the conditions which authorize a sale under HRS § 668-7 are present here.

## IV. Conclusion

Accordingly, we vacate the circuit court's April 18, 2023 Final Judgment and related orders. We remand this case to the

45

circuit court to undo the CPR, partition the Property by sale, and hold further proceedings consistent with this opinion.

| | |
|---|---|
| Kurt W. Klein (Robert G. Klein, David A. Robyak, James M. Yuda, Jason W. Jutz, and Mallorie C. Aiwohi also appearing) for Defendants-Appellants | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |
| | /s/ Lisa M. Ginoza |
| Paul L. Horikawa for Plaintiffs-Appellees | /s/ Vladimir P. Devens |

